### SAMUELS v. RICHMOND &c. RAILROAD COMPANY.

1. ACTIONS—EXEMPLARY DAMAGES.—A tort that sounds in exemplary damages is where some right of person or property is invaded maliciously, violently, wantonly, or with reckless disregard of social or civil obligations; and to recover such damages, plaintiff must allege the elements of such a tort, and to such allegations the testimony must be restricted.
2. PASSENGERS—EXEMPLARY DAMAGES.—Where a railroad company fails to deliver a passenger, according to its contract, at the station to which it sold a ticket, either by stopping as the train passed or by returning the passenger thither, the company is responsible, unless it shows some controlling exigency which prevented such delivery. It is liable in exemplary damages, if such failure and the ejection of the passenger from the train at some other point, were wilful and without just excuse.

[1] Next case *infra.*

3. EXEMPLARY DAMAGES.—The damages awarded against a person or corporation for an injury so inflicted as to justify exemplary damages, as herein defined, are intended not only as compensation to the party injured, but also as a punishment to the wrong-doer.

4. IBID.—JURY.—The judge was requested to charge "that while the jury are the sole judges of the effect of the proof, it is the province of the court to say whether there is or is not proof going to establish every issuable fact in this case, and that in this case there is no proof to show wilfulness or oppressiveness or cruelty on the part of the conductor, without which the jury can only find a verdict for actual damages sustained by the plaintiff, and that in the absence of such proof, a verdict for punitive or exemplary damages cannot be sustained." *Held,* that the request was properly refused, because not broad enough. Moreover, while a judge may determine in the first instance whether there is any evidence in support of the facts in issue, he cannot in submitting a case to the jury, instruct them that any of such facts have been proved.

5. IBID.—A request to charge the jury that "if the testimony satisfies you that the defendant was at fault, the compensation to the plaintiff must be limited to the inconvenience, loss of time, and labor of travelling back from the point where she left the train," was properly refused; it was not sufficiently comprehensive.

6. IBID.—NON-SUIT.—In action for exemplary damages, a non-suit not having been moved and there being some testimony to sustain the claim, the judge should not have granted a non-suit and properly submitted the case to the jury.

Before IZLAR, J., Aiken, April, 1891.

This was an action by Elizabeth Samuels, widow, against the Richmond & Danville Railroad Company, commenced February 20, 1891. The judge charged the jury as follows:

The law of this case, as I understand it, is very simple and may be comprehended in a very brief charge. A great deal has been said which may tend to distract your minds and get you away from the true issues in the case. But the law to my mind is very simple and plain. In the first place, negligence is defined to be the want of ordinary care, or, in other words, the doing of an act which an ordinary prudent man would not do under the circumstances, or omitting to do what a man of ordinary prudence and care would do under the circumstances. That is the definition of negligence. It is the duty of the court to de-

fine to you what is negligence, and you are to find the facts and apply them to the law, and then say from the facts found by you whether or not there has been any negligence.

If a party buys a ticket to go to a station, from one station to another, and he is carried beyond the station to which he has purchased his ticket, and is there put off at an unusual place, not at a station, but some distance from a station to which he has purchased his ticket and contracted to go, why, that would be a breach of duty on the part of the railroad company, for which the party would be entitled to recover such damages as was the direct result of that act. But if, in addition to that, the party who had purchased the ticket demanded of the conductor that he should be returned to the station to which he had purchased the ticket, and he wilfully and without just excuse refused to return the party to the station and ejected him from the train, why, of course, he would be entitled to recover in addition to the actual damages which he had sustained by the act of the conductor such exemplary damages as you in your judgment should from the facts of the case think he was entitled to. Now, when we use the term "wilful" in this definition, it means something more than the mere refusal of a party to return, and therefore you are to take that into consideration when you come to consider the evidence bearing on this question in connection with the conduct of the conductor on this occasion.

You will remember the testimony on this point. There was testimony introduced in this case tending to show that the party purchased a ticket at Vaucluse to go to Aiken Junction, and there is some counter-testimony in regard to that fact which you are also to consider, and the testimony of the conductor that the ticket was to Graniteville; and you are to consider all that matter, gentlemen, and decide whether or not this ticket was purchased at Vaucluse by the plaintiff to go to Aiken Junction, and you are to decide that question by the preponderance of the evidence in this case as you have heard it upon the stand. You will recollect further the manner in which the plaintiff left the train, because that is a very important part of the case; and if a party is carried beyond the station to which she has purchased her ticket (in case you come to the conclusion that that is so in this

case), and demands that she be returned to the station, and the conductor wilfully refuses in a sense which I have endeavored to show you—that a mere refusal would not do, but it must be wilful and without excuse—should refuse to return her, why, she would be entitled to such damages, not only for what was the contract and may be the result of the act, but such additional damages as you in your judgment may think proper to give her by way of exemplary damages.

You will recollect the testimony on that point. As well as I recollect it, the conductor testified that he went into the car and this lady demanded to get off, and he had the train stopped immediately in order that she might get off the train ; but you will recollect the testimony as to the manner in which she was taken from the train. You have all the testimony before you, and must determine whether or not she was ejected from that train, or whether she got off of her own accord, and at that time and at that place demanded of the conductor that she should be returned and the conductor said that he could not return. And while on this point, I would state also that the mere fact that a party talks in a loud voice when this refusal was made, would be no evidence of malice or profaneness or recklessness or wantonness ; I say, the mere fact that a man talked in a loud tone, would not be any evidence of oppressive, malicious, or insulting conduct.

When you come to consider the damages after you have made up your minds from the preponderance of the evidence, that there was negligence in this case, you will go a step further and ascertain the damages which the plaintiff has sustained by reason of the acts of the defendant. And when you come to consider these damages, I don't know that I can charge you better as to my view of the damages than are contained in the requests of the plaintiff to charge in this case, and I charge you, therefore, the other request of the plaintiff with such additional remarks as I shall see fit. "The rule in regard to damages is, that they should be such only as would compensate the plaintiff for such injuries as she had suffered, and if there was an expulsion and the same was unlawful, and the conductor's conduct was oppressive, malicious, or reckless, and disregardful of the plaintiff's feelings, or insulting, or unnecessarily rude and violent, the jury may go

beyond the actual amount of damages done the plaintiff, and give such amount as they think she ought to have, not only to compensate her, but to punish the defendant for such conduct, but the amount should not be oppressive."

In addition to that, I say that the mere fact that one talks loud is no evidence that the conduct of the conductor was oppressive, malicious, reckless, or disregardful of the plaintiff's feelings, or insulting, and you are to judge from the evidence and determine whether or not there was anything in this on the part of the conductor on this occasion, and the manner in which this party left the train, which was oppressive, malicious, or reckless, or disregardful of the plaintiff's feelings, or insulting. You recollect the testimony on that point, and it is for you to determine from the testimony whether or not there was anything in the conduct of the conductor on that occasion which was reckless, oppressive, or disregardful of the feelings of the plaintiff, or insulting. The plaintiff's first request to charge you has been already covered by the charge which I gave you in the outset in defining what I understand to be the law of negligence.

I have been requested to charge you by the defendant, and I have not had time to consider them very carefully, and, in fact, I haven't had time to consider them at all: "That the burden of proof is upon the plaintiff to show by the preponderance of evidence that she bought a ticket from Vaucluse to Aiken Junction and not to Graniteville." I so charge you.

Second. "That whilst you are the sole judges of the effect of the proof, it is the privilege of the court to say whether there is or is not proof going to establish every issuable fact in the case, and in this case there is no proof to show wilfulness or oppressiveness or cruelty on the part of the conductor, and the jury can find only a verdict for actual damages sustained by the plaintiff, and in the absence of such proof a verdict for punitive or exemplary damages cannot be sustained." I cannot so charge you, not in the language of that request.

Third. "The general rule is that when pain of mind is the subject of injury without bodily damages, it must be so connected in order to be included in the estimate, unless the injury is accompanied by circumstances of malice or insult or inhumanity."

32—35

Well, I charge you that; and as I understand the law on that subject, there is no difference of opinion between the counsel for the plaintiff and the counsel for the defendant—that if the pain of mind is the result of bodily injury, why, of course, the plaintiff will be entitled to recover such damages as she suffered from mental anguish; and there may be also mental anguish arising from other causes than from injury to the body where there are circumstances of malice and insult and inhumanity. I so understand this request, and I charge it in that way.

The next request I cannot charge you, because, as I understand it, it is inconsistent with what I have already said in regard to the damages in this case.

Now, gentlemen, in making up your verdict in this case, you are to determine this case on all matters at issue by the preponderance of the evidence, and when we speak of the preponderance of the evidence, we don't mean the number of witnesses which are sworn on one side and the number which are sworn on the other, because the testimony of one witness who was present and saw all that transpired, perhaps, might outweigh the testimony of half a dozen witnesses who were not in a position to judge; therefore we mean the weight of the evidence when you weigh the whole evidence on the one side of the issue, and the whole evidence on the other side, whichever way the balance falls, why, the case must be decided in that way by the preponderance of the evidence—the weight which you attach to it when you come to consider it.

The jury found for plaintiff, and the defendant appealed on the several grounds stated in the opinion.

*Messrs. J. S. Cothran* and *B. L. Abney*, for appellant.

*Messrs. Henderson Bros.* and *J. R. Cloy*, contra.

March 16, 1892. The opinion of the court was delivered by
MR. JUSTICE POPE. In the Court of Common Pleas for Aiken County, on the 20th day of February, 1891, before his honor, Judge Izlar, and a jury, the action for $1,000 damages, between

the plaintiff and defendant, came on for trial. The complaint, amongst other things, alleged: "3. That on the 24th of December, 1890, the plaintiff, Elizabeth Samuels, a widow, with her three little children, boarded the south-bound passenger train of the defendant lessee company at Vaucluse, a station on said road, for the purpose of taking passage to Aiken Junction, another station on said road; that she purchased from the agent at Vaucluse a ticket for said Aiken Junction, having paid him the fare usually demanded and paid therefor, which said ticket was taken up by the conductor in charge of the train, and yet said train ran negligently and carelessly carried her beyond said Aiken Junction for a considerable distance, and plaintiff and her children were carelessly, negligently, and in a rude, angry, and insulting way ejected from the said train at a place unusual and remote, wet and damp, and she and they were compelled to walk back to said Aiken Junction, and from there to the place they were going, encumbered with bundles and baggage, without the escort who were to meet her at the station; by all of which acts and grievances said plaintiff was injured in her person and feelings to her great damage, one thousand dollars." The answer of the defendant denied the allegations in said paragraph three of the complaint.

The testimony established the following as the facts of the case: On the 24 December, 1890, a ticket was purchased of the defendant's agent at Vaucluse and received by the plaintiff, by which she was entitled to passage on defendant's train to Aiken Junction on defendant's leased road. The conductor, after plaintiff delivered to him her ticket, was requested by her to be let off the train at Aiken Junction. The plaintiff was accompanied by her three little children and carried a large basket. Her brother-in-law was expected to meet her at Aiken Junction, and was there to meet her and accompany her to his house. The train was about half hour behind the schedule time, and was not stopped at Aiken Junction, although it was the duty of the defendant to stop there to let off and take on passengers at that point.[1] The conductor, being apprised of his failure to let plaintiff and her children get off at Aiken Junction, did stop the train

---

[1] It seems to have been a flag station.—REPORTER.

from 275 to 400 yards beyond that station. The point at which plaintiff and her children were landed was damp and in a ditch. Plaintiff requested conductor to take her back to the station, which he declined to do. No reason was given for such refusal. Plaintiff suffered for more than a week from prostration because of these facts.

Both plaintiff and defendant made written requests of the trial judge for charges. No complaint is made of the charge upon some of such requests, and as any alleged errors therein are embodied in defendant's grounds of appeal, we will consider them there. The jury rendered a verdict for plaintiff of one hundred dollars. After judgment thereon, the defendant appealed therefrom.

We will now consider the grounds of appeal. The first and second grounds will be considered together, and are as follows: 1. "Because the presiding judge erred in charging the jury, 'that if the conductor, upon demand that he should return the passenger to the station to which she had purchased her ticket, wilfully and without just excuse refused to do so, and ejected her from the train, she would be entitled to recover exemplary damages'— the error consisting of not charging the jury that such action must amount to malicious, insulting, or oppressive conduct on the part of the conductor. 2. Because the presiding judge erred in charging the jury, 'that if a party is carried beyond the station to which she has purchased her ticket and demands that she be returned to the station, and the conductor wilfully refuses in a sense that I have endeavored to show you—that a mere refusal would not do, but it must be wilful and without excuse—should refuse to return her, why, she would be entitled to such damages, not only for what was the contract and may be the result of the act, but such additional damages as you in your judgment may think proper to give her by way of exemplary damages.' "

The propriety of this court considering these grounds of exception together, will be manifest by reading both at the same time. If taken singly, each one would fall within that class which makes a quotation here and a quotation there of a judge's charge, by which a great injustice is done the trial judge. He is entitled to have his whole deliverance upon any branch of the law consid-

ered. Counsel have shown their careful preparation in this case by having made written requests to charge. The great advantage from such a course is, that they are thereby enabled to have the trial judge meet their issues squarely, and if in error, point this court to the same. They did not go far enough in this case. The consequence is that they assail the charge of the trial judge by snatches. This court has frequently expressed its disapproval of such a course. Apart from the authority of such ruling here, its wisdom is apparent and should commend it to the ready acceptance and observance by the bar. Inasmuch, however, as these grounds of appeal, when considered together, reasonably well represent the charge of the trial judge on the point made, we will consider it.

It must be borne in mind whenever a *tort* sounds in exemplary damages, that it belongs to a particular class of actions; it is one species of that class. A *tort* that sounds in exemplary damages is where some right of person or property is invaded maliciously, violently, wantonly, or with reckless disregard of social or civil obligations. The terms malicously and wantonly are used in this definition in the sense that they are applied by writers in connection with the subject here considered. To entitle a plaintiff to exemplary damages, he must not only prove the elements that enter in to make up this cause of action, but he must in the first place in his complaint set up distinctively the elements that make up his cause of action, and if he fails to do so, his complaint should be dismissed. Any other course is subversive of the rules of pleading: it may be to complain of one wrong, and then prove another. Every defendant is entitled to know, by the pleadings, what he is expected to answer; having answered, he is entitled to have the testimony restricted to the cause of action set up in the complaint. Fortunately for the plaintiff here, the complaint sets up a *tort* sounding in exemplary damages. Let us now consider these exceptions.

What is the duty of a common carrier to a passenger, so far as carriage to the point of destination is concerned? Suppose, by way of illustration, a stage coach had as its passenger one who had paid his fare and obtained passage to a particular point on the route traversed by such stage

coach.   What would be the right of the passenger there ?   Un-
questionably it would be to be carried to the exact point con-
tracted for; but suppose the carrier recklessly, or wilfully, or
wantonly, or maliciously, or negligently carried the passenger
past the place of his destination, would there not arise a pal-
pable invasion of such passenger's right?   It is true such a
wrong would, so to speak, arise out of the contract of carriage,
yet it was not an actual stipulation in the contract by express
words, for it is seldom, if ever, that the parties to such a contract
enter into such stipulations.   The contract therefore would not
be complained upon, nor would it be the cause of action.   No,
rather it would be the wilful, or malicious, or wanton, or neglect-
ful, or utter disregard shown by the carrier to the rights of the
passenger.   The duty owed by the carrier was not paid and
would not be answered except by the delivery of the passenger at
the point of destination, if in his reasonable power.   But suppose
the horses took fright and became unmanageable and ran while
near the point of destination, and the carrier after the fright used
his utmost endeavors to stop them and could not do so, he would
not be culpable.   Or suppose a fire was raging at the point, so
that it could not with safety be reached, or suppose in approach-
ing the destination it was learned that some violent disease was
raging that endangered the lives of any that approached the point
of passenger's destination, such failure would not be visited
upon the carrier.

Now, the foregoing illustrations, as applied to a stage coach,
are such as might attend passage by that mode of travel.   In the
case of railroad trains, when a passenger had provided himself
with the right to demand a delivery of himself as a passenger
thereon at some point on the railway's route of travel, if such
carrier was surrounded by circumstances that would excuse his
failure to deliver his passenger at its depot or station, such as a
fire raging at that point, or in case of delay, the danger of a col-
lision with another train if a stop was made, such railroad would
be excused for such failure.   But suppose it arose from the care-
less indifference of the conductor or a malicious disregard of the
passenger's right, would it be excusable ?   Certainly not.   If the
carrier can with safety discharge his passenger at the point of

destination, such passenger has the right to such action; and if from any cause and in a reasonable distance from such station that has been passed without the passenger having been afforded an opportunity to alight at his destination such omission is discovered, it is the duty of the carrier to return such passenger to that destination. It will not be excused because it is inconvenient or troublesome; it will only be excused upon the proof of some controlling exigency, and the burden of such proof is upon the carrier the moment the passenger proves that he had the right of passage to a certain point and a compliance on his part with ordinary care, and that such point of destination was passed by the carrier without giving the passenger an opportunity of getting off then. Such being our view of the law, and after applying it to the charge of the trial judge, we do not find that he has committed any error, and therefore these two grounds of appeal are dismissed.

The appellant urges as his third ground of appeal: "3. Because the presiding judge erred in charging the jury plaintiff's second request to charge, which was as follows: 'The rule 3 in regard to damages is, that they should be such only as would compensate the plaintiff for such injuries as she had suffered; and if there was an expulsion, and same was unlawful, and the conductor's conduct was oppressive, malicious, reckless, and disregardful of the plaintiff's feelings, or insulting or unnecessarily rude and violent, the jury may go beyond the actual amount of damage done the plaintiff and give such amount as they think she ought to have, not only to compensate her, but to punish the defendant for such conduct, but the amount should not be excessive.' "

In our consideration of the first two grounds of appeal, we have laid down a definition of exemplary damages. We did not state the authorities for such declaration. Briefly, it may be stated as the result of judicial interpretation of this class of torts, that the damages awarded against the defendant are intended to compensate the plaintiff for the wrong done him and at the same time as a punishment for the tort feasor. This view prevails in this and the mother country. It applies to natural persons and to artificial persons. It not only reaches to the master, but also to his

servants. Such damages apply to any malicious, violent, oppressive, wanton, or inconsiderate or reckless disregard of the social or civil obligations shown by one person with the rights of another. One of the latest expressions of our own court of last resort in this State on this subject may be found in the judgment of this court delivered by Chief Justice McIver in the case of *Duckett* v. *Pool,* 34 S. C., 324, where he said: "In an action of tort, where the testimony satisfies the jury that the defendant has acted maliciously, wilfully, or in wanton disregard of the rights of plaintiff, the jury may, in addition to such damages as will compensate plaintiff for any loss or injury he may have sustained in person, property, or feelings, award other damages, called indifferently 'exemplary,' 'vindictive,' or 'punitive,' by way of punishment to the defendant." In this case the Chief Justice has collated a large number of our own decisions on this subject, amongst others *Palmer* v. *Railroad Company,* 3 S. C., 597; *Hall* v. *Railway Company,* 28 *Id.,* 263; *Quinn* v. *S. C. Railway Company,* 29 *Id.,* 386. Care should be taken to observe the meaning attached to the terms, *malicious, wanton,* in connection with this offence, for both the text writers and judges in their decisions attach a significance to them over and beyond their primal meaning. In the light of these observations, we fail to detect error in this part of the judge's charge. This ground of appeal must be dismissed.

The fourth ground of appeal is presented in these words: "4. Because the presiding judge refused to charge the defendant's second request, which was as follows: 'We request your honor to charge the jury, that while they are the sole judges of the effect of the proof, it is the province of the court to say whether there is or is not proof going to establish every issuable fact in this case, and that in this case there is no proof to show wilfulness or oppressiveness or cruelty on the part of the conductor, without which the jury can only find a verdict for actual damages sustained by the plaintiff, and that in the absence of such proof a verdict for punitive or exemplary damages cannot be sustained.'" By reference to the "Case," we find the trial judge used this language, "I cannot so charge you—not in the language of that request."

It will be conceded that a party making a request has to be careful not to mingle the doubtful or bad with the certain and good, for if the judge cannot charge it as a whole, and the request is faulty, it is not error to refuse the request. We think the safer practice is for the trial judge to indicate what parts are objectionable and which he declines to charge, and give the party seeking the request the benefit of his charge upon what is good. Of course, this is upon the supposition that the request is so divisible. But we would not be understood as laying down any rule on the subject. It may be better to let attorneys, in their laudable efforts to attain the very best results of which their cases are capable, have this as an additional stimulus to an excellence that will surmount all obstacles. However, we will not take advantage of this seeming difficulty, for unquestionably the request was not broad enough to embody correctly the definition of the torts redressible by exemplary damages.

But there is a question presented by this exception that merits attention : we mean that part that seeks to fasten upon the trial judge the duty of passing upon the question, whether there is. or is not proof going to prove every issuable fact in this case. What the appellant seeks here is a ruling from the trial judge as to his duty in the first instance, before submitting the case to the jury, but to be submitted by him in his instructions to the jury, to decide whether, under the testimony in this case, there is made a case justifying exemplary damages. It is due to appellant here, that we should acknowledge that there are some expressions in that portion of the work of Mr. Thompson on Negligence devoted to a consideration of punitive damages, notably at page 1264, which seem to indicate that the trial judge should decide this question, and so state his conclusion to the jury. This is the language of that author: "Exemplary, punitive, vindictive damages or smart money, as they are called indifferently, are given by way of punishment of the wrong committed by the defendant, and with a view of deterring others from like offences. *Whether or not the case is one that justifies exemplary damages, is a question for the court to determine in its instructions to the jury.* In the discharge of this duty, the court looks to the *animus* of the defendant that accompanied the injury. If it was wantonly and

wilfully inflicted, or with such a gross want of care and regard for the rights of others as to justify the presumption of wilfulness or wantonness, the court will instruct the jury that they are at liberty to find for the plaintiff, in addition to a compensation for the injury actually sustained, such a sum as the circumstances justify."

While this court has already approved this declaration by the author, wherein he defines this class of torts, yet we have been unable to discover anything in this class of offences that justifies any greater power in a trial judge in regard thereto than such as are legitimately exercised by him in any other cases. This court has repeatedly recognized it as the privilege and duty of a trial judge to determine, in the first instance, whether there is any evidence in a case going to establish the issuable facts, and if the learned author merely intends to state this conclusion, we heartily concur with him. But if it is intended to go further, and say that a trial judge must decide and announce to the jury that the testimony offered has established certain conclusions, thereby invading the province of the jury, we cannot concur, for such a view is not only at variance with repeated declarations of this court limiting the power of trial judges in deciding questions of fact in his charge to the jury, but also with the letter and spirit of the provisions of our State Constitution relating to trial by jury. We are very glad of an opportunity, occurring as it does so soon after the decision of this court in the case of Spellman *v.* Richmond and Danville Railroad Company (*ante*, 488), where this very quotation from Thompson on Negligence is made, to record this expression of our views touching the same, for, we may remark, in the hurry incident to the preparation of the opinion of the court in that last mentioned case, we failed to state our restricted approval of the same. This ground of appeal must be dismissed.

Appellant's fifth ground of appeal is: "Because the presiding judge erred in refusing to charge the jury the defendant's fourth request, which was as follows: 'If the testimony satisfies you that the defendant was at fault, the compensation to the plaintiff must be limited to the inconvenience, loss of time, and labor of travelling back from the point where she left the train.' " By this request to charge, it seems to us that the

defendant sought to restrict the consideration of the jury to only a portion of law relating to exemplary damages. We think the trial judge very wisely so considered the request. Having stated already in this opinion at length the law intended to apply to this class of torts, we will not repeat it here, except to state that this request was not broad enough. This ground of appeal must be dismissed.

Lastly, the sixth ground of appeal will be considered; it reads: "Because the presiding judge erred in permitting the question, whether the plaintiff was entitled to exemplary damages, to go to the jury, because there were no facts in the case to characterize the conduct of the conductor as malicious, oppressive, or reckless of the rights of the plaintiff, and submission of such a question to the jury tended to mislead them as to their duty in the case." As we before remarked, this was an action upon a tort sounding in exemplary damages, and not one for actual damages. The testimony offered was responsive to the allegations of the complaint. If there was a failure of plaintiff's testimony, a non-suit was in order. This the trial judge could grant of his own motion, or upon a motion therefor by defendant. Certainly the defendant did not so move. The trial judge evidently thought there was some testimony on the issues raised by the pleadings. Such being the case, he ought not to have granted a non-suit. Without a non-suit, it was imperative that the case should be submitted to the jury. Unfortunately for the defendant, they took a different view of the virtue of the testimony from that entertained by it. Their verdict was not large. This court seldom interferes with verdicts like this. This ground of appeal must be dismissed.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.