## CHIN KEE *v.* KAELEKU SUGAR COMPANY, LIMITED.

### No. 1691.

EXCEPTIONS FROM CIRCUIT COURT SECOND CIRCUIT. HON. D. H. CASE, JUDGE.

SUBMITTED AUGUST 5, 1926.        DECIDED DECEMBER 28, 1926.

PERRY, C. J., BANKS AND PARSONS, JJ.

DAMAGES—*punitive—pleading.*

In an action of trespass, to entitle plaintiff to punitive damages he must set up distinctly in his complaint the elements that make up his cause of action therefor.

SAME—*same—same.*

In order to recover punitive damages it must appear from the complaint, either by direct averment or from necessary inference, that the act occasioning the damages was done maliciously or was

Opinion of the Court.

the result of the wilful misconduct of the defendant or of that reckless indifference to the rights of others which is equivalent to an intentional violation of them.

SAME—*same—instructions.*

It is error to instruct on the question of punitive damages where the pleadings afford no basis for their allowance.

SAME—*same—same—rule respecting principal and agent.*

Punitive damages are not to be allowed as against the principal unless the principal participated in the wrongful act of the agent or expressly or impliedly by his conduct authorized or approved it either before or after it was committed; and in an action of trespass against the principal it is error to instruct upon the question of punitive damages in the absence of proof of such participation, authorization or approval.

INSTRUCTIONS.

Where defendant requests several instructions each setting up a separate matter of defense which, if found by the jury to be sustained by the evidence, is sufficient to warrant a verdict for the defendant, it is error to refuse defendant's requests upon the ground that the matters therein set forth are covered by the court's instruction when the court's instruction therein referred to is a blanket instruction setting up in the conjunctive the matters requested by defendant, and charging the jury in effect that if it finds all such matters to be true then its verdict should be for the defendant.

SAME.

In the circumstances set forth in the last preceding paragraph, in the absence of instructions substantially similar to those requested by the defendant, or in the absence of a blanket instruction setting forth such matters of defense in the disjunctive, it is error to refuse defendant's requests.

OPINION OF THE COURT BY PARSONS, J.

This is an action of trespass tried before a jury in the second circuit court resulting in a verdict for plaintiff in the sum of $1729.50. Judgment was entered for the amount of the verdict and costs and the case is before us upon defendant's bill of exceptions.

Paragraphs 2 and 3 of plaintiff's complaint allege:

"(2) That on or about the 10th day of December, 1923 the defendant herein, through its agents and employes did, unlawfully and contrary to the rights of plaintiff,

enter upon the lands described in that certain general lease #1987" (afterwards amended to 987) "dated January 31, 1918, from the Commissioner of Public Lands of the Territory of Hawaii to Chin Kee, said lands being situate at Hana, County of Maui, T. H., to the possession of which premises the said plaintiff is and was entitled under and by virtue of said lease; and said defendant then and there, through its agents and employes, forcibly and contrary to the rights of plaintiff herein, took, removed and hauled away ninety tons of sugar cane of the value of $500.00, the property of the plaintiff herein, and converted the same to its own use and benefit.

"(3) That by reason thereof the plaintiff herein has been injured and damaged in the sum of $3,500.00."

Defendant's answer was a general denial.

Plaintiff in his brief (p. 1) admits that of the total amount of $3500 for which judgment is prayed, the sum of $3000 is claimed as punitive damages. The complaint as above set forth contains no allegations of wilfulness, wantonness, insult, outrage or oppression on the part of defendant; and no other averments so characterize the alleged trespass as to entitle the plaintiff, in the event of supporting proof, to more than compensatory damages.

In his brief plaintiff-appellee thus sets forth evidence taken at the trial (with page references, which we have omitted):

"The transcript of evidence discloses: That Chin Kee, the plaintiff, has been a resident of Hana for a period of thirty years and that he has been raising sugar cane for the past eighteen years on three different pieces of land, i. e., (1) A piece known as the hui land described as Grant #2405, and comprising an area of 35 acres, the plaintiff and defendant and others being cotenants thereof, and the plaintiff having an interest in said hui land to the extent of 13½ acres. (2) A piece containing three acres, which is the piece in litigation, and being a portion of general lease from the Government to the plaintiff, #987. These three acres are enclosed by a

stone wall with barb wire on top of said wall. The hui land and the three acre piece adjoin. (3) The third piece of land cultivated by plaintiff is a little distance away near the Government road. These three pieces of land for the convenience of the plantation have been designated as Field 24. After the harvesting of the 1921 crop the plaintiff testified that the defendant, through its agents, fired him off the hui land and at that time plaintiff told them to leave the three acres alone. That at the time the plantation forced plaintiff out of possession of the hui land the plaintiff had done certain work on said lands, i. e., cleaning up and burning of trash, etc. That the plaintiff cultivated the three acres in question from time to time and brought the crop to maturity. That the crop of sugar cane was pretty good, amounting to about ninety tons of cane of the value of $500.00. That on or about the 10th day of December, 1923, the defendant, through its servants and employees, that is, G. K. Kawaloku, a field boss of the Kaeleku Sugar Co. together with eighty men employees of defendant broke down the stone wall around the three acre piece in question, entered the premises, cut and removed the cane growing thereon and hauled same to the mill of defendant where, according to the testimony of Mr. Gibb, the manager of the plantation, it was converted into sugar, sold, and the proceeds appropriated by the defendant. The evidence further discloses that the field boss broke into and entered the premises in question under instructions of John Murray, who is the head overseer and superintendent of the growing of sugar cane for the Kaeleku Sugar Company. The plaintiff testified that said entry upon the property in question was without his knowledge and consent and that he had never received any statement from the plantation and has never been reimbursed for the cane which was removed from said premises. That neither the Kaeleku Sugar Co. nor any one else did any work in the way of clearing or cultivating said three acres, but that the expense of clearing and cultivating said crop was borne by plaintiff exclusively. That the defendant fired plaintiff from the hui land four or five days after the crop was harvested in 1921. That the plaintiff continued in pos-

session of the three acres in question after the cane was cut and removed by defendant as alleged in the complaint. That the sugar cane raised by the plaintiff from time to time on the three different pieces of land mentioned was sold to the Kaeleku Sugar Co. That the crop in question is the ratoon crop after the 1921 crop was harvested. While the defendant, through its agents, was cutting and removing said crop, plaintiff's son learned of same and demanded information as to why they were cutting said cane and the plaintiff, upon discovering that his cane was being removed by defendant, made a complaint to the Deputy Sheriff of Hana and the County Attorney, and requested that criminal proceedings be taken, but apparently no criminal proceedings were instituted. The Sheriff, taking the stand in behalf of the defendant, admitted that the plaintiff had come to him but only for advice. The County Attorney, while admitting that he had had a conversation with the plaintiff and also admitting that at the time of said conversation he had been employed by the Kaeleku Sugar Co. to represent their interests, denied that the defendant had requested criminal proceedings. Mr. Gibb, the manager of the plantation, testified that he had had a verbal arrangement with Chin Kee, the plaintiff, in August, 1922, to take over the cane in Field 24, which included the three acres in question. That the Kaeleku Sugar Co. cleared, cultivated and did all of the work necessary to bring said crop to maturity on the three acres in question. That he did not get plaintiff's consent to cut and harvest the three acres in question and that the plaintiff did not do any work on the three acres in May or June of 1922. A receipt for $40.00, signed by Chin Kee, was introduced in evidence by defendant who claimed that said receipt was for moneys paid by defendant to plaintiff as rental for the use of the three acres in question. The plaintiff, explaining said receipt, testified that he could not read said receipt in English; that said receipt had nothing to do with the three acres in question but that it was signed by him and delivered to defendant at the time of the settlement between the defendant and plaintiff of and concerning 39 days of work by plaintiff on the hui land

at the time that the plaintiff was fired off said premises by the defendant. Mr. John Murray, head luna of the Kaeleku Sugar Co., testified that the plantation did all of the cultivating of said premises and that no one else had anything to do with the cultivation of same. That he was instructed by Mr. Gibb, manager of the Kaeleku Sugar Co., to cut and remove the cane in question from the premises of the plaintiff. That he did not see Chin Kee, the plaintiff, at the time the cane was cut. That the Kaeleku Sugar Co. harvests approximately 1400 acres of cane yearly. The defendant produced a witness by the name of Ramos Cesaria who testified that he was employed by defendant and had worked on the three acres in question the early part of 1923. The plaintiff denied having had any arrangement with Mr. Gibb, manager of Kaeleku Sugar Co., whereby the plantation was to cultivate the three acres in question, or that he voluntarily threw up the cultivation of the hui land."

Twenty-one exceptions are set forth in defendant-appellant's bill, eighteen of which are discussed in the briefs. These exceptions may be roughly grouped as follows: Two were to rulings made during the trial, five were to instructions, eight were to the court's refusal to instruct as requested, one was to the verdict, one to the overruling of defendant's motion for a new trial and one to the judgment.

Exceptions 11, 12 and 13 are to instructions and requests for instructions regarding punitive damages. They raise the same questions of law and will be considered collectively. Defendant requested the court to instruct the jury (13-A): "You are instructed not to find or give any punitive damages in this case." This request was refused and exception taken to the court's refusal to give it.

Defendant also requested the court to instruct the jury (No. 15): "In this case the measure of damages, if you find that plaintiff is entitled to damages, is the fair rea-

sonable value of the property at the time it was taken by the defendant." This request the court refused in the form presented but gave the instruction in modified form by reading the sentence last above quoted and adding thereto the following clause: "plus such punitive damages as you believe plaintiff may be entitled to;" to which refusal and instruction as modified defendant excepted.

As its own instruction No. 10 the court gave the following: "In trespass to property, unless special misconduct or aggravation appears, there is a fixed standard by which the damages can be computed, which is actual compensation to the party injured. However, if you believe from all of the evidence that a trespass was committed as alleged in the declaration by the defendant or its servants, agents or employees, in a wanton, wilful and reckless manner, and that the plaintiff has suffered any actual damage therefrom, then the jury are authorized to find punitive damages, that is, such damages as will compensate the plaintiff for the wrong done to him and to punish the defendant and to teach other persons not to offend in like manner."

At the close of plaintiff's case plaintiff moved to amend his complaint by inserting the word "wilfully" after the word "forcibly" in the second paragraph thereof hereinabove quoted; and upon defendant's objection the court denied the motion giving (as shown by the transcript, p. 119) the following reason for such denial: "I think perhaps there is no question but what the court would have a right to permit it, but I am of the opinion that so far as punitive damages are concerned there has been very little evidence, or evidence of comparatively little weight, and for that reason I feel loath to grant the amendment. It seems to me the case of punitive damages is decidedly weak."

Upon the plaintiff's submission of the motion to amend

above referred to, it was within the province of the court to decide whether or not the proof justified such amendment. "The question whether there is any evidence in a given case to warrant the jury in finding exemplary damages is one for the determination of the court." 8 R. C. L., title "Damages," Sec. 200, p. 660; *Samuels* v. *Richmond etc. R. R. Co.,* 35 S. C. 493, 14 S. E. 943, 28 A. S. R. 883; *Eshelman* v. *Rawalt,* 298 Ill. 192, 131 N. E. 675, 16 A. L. R. 1311.

Whether or not the trial court's ruling above set forth is a ruling squarely upon this question is a matter not presented to us for decision—nor are we called upon in the present case to decide whether or not the granting of the motion and the insertion of the one word "wilfully" in the complaint as asked by the plaintiff would have been sufficient, upon proper proof, to have entitled the plaintiff to more than compensatory relief. The essential fact remains that the amendment was *not* granted and that the complaint sets forth no elements of recklessness, wilfulness or intentional wrong on the part of the defendant. In the absence of such allegation punitive damages cannot legally be claimed. "To entitle one to such damages   *   *   *   he must set up distinctly in his complaint the elements that make up his cause of action therefor, and must make such averments as will advise the defendant that he will have to meet a demand of that kind at the trial. If the wrongful act is of such a character or is attended by such conduct or animus of the defendant that the law authorizes the assessment of exemplary damages, the complaint should so describe the act that it may appear therefrom to be such a case." 8 R. C. L., Sec. 169, p. 626; *Otto Kuehne Preserving Co.* v. *Allen,* 148 Fed. 666, 8 Ann. Cas. 746. "While it is not always necessary specifically to allege wantonness, malice or ill-will, in order to recover exemplary damages, it must

appear, nevertheless, from the complaint, either by direct averment or from necessary inference, that the act occasioning the damages was done maliciously or was the result of the wilful misconduct of the defendant, or of that reckless indifference to the rights of others which is equivalent to an intentional violation of them * * *." 8 R. C. L., p. 627. Even where the complaint prays for punitive damages it has been held that this allegation alone is insufficient where there are no allegations of facts entitling plaintiff to recover such damages. *Id.*

As to substantive law relative to punitive damages, it has been held in Hawaii that, in actions for injuries to persons, vindictive damages may be awarded; but in trespass to property, unless special misconduct and aggravation appear, the measure of damages is actual compensation to the injured party. *Bernard* v. *Loo Ngawk*, 6 Haw. 214.

This court has further held that vindictive damages are recoverable in actions of tort when the defendant's misconduct has been wilful or when he has acted with a reckless indifference to the rights of others. *Bright* v. *Quinn*, 20 Haw. 504.

The *proof* of aggravation on the part of defendant relied upon by plaintiff is thus stated in his brief. After quoting the transcript as to the cross-examination of the plaintiff upon the items going to make up his damages in the sum of $3500 and the ruling by the court sustaining plaintiff's objection to further cross-examination along this line, the brief proceeds: "It will be noted from the evidence just quoted that the ruling of the court did not include any evidence as to breaking or entering into the premises in question and further the real evidence of aggravation in this case upon which plaintiff claims punitive damages was introduced subsequent to the ruling of the court as appears from the testimony of G. Kawaloku

(Tr. 105.)   The testimony of this witness clearly shows that he was the field boss and in the employ of the defendant; that under the instructions of John Murray, head luna of the defendant company, he, in company with eighty men employees of defendant, entered upon the premises in question, broke down the wall around the said three acres, and cut and removed the growing crop of cane thereon.   We submit that while he was cutting said cane the son of plaintiff came there and demanded to know why he was cutting his father's cane; that the said Kawaloku in reply said that he had been instructed so to do and continued to remove the cane.   We submit that from the testimony of this witness there is ample evidence of aggravation to justify punitive damages."

The testimony above referred to taken in connection with other evidence in the case is not sufficient, and would not have been sufficient even in the event of proper averment in the complaint, to sustain a verdict for punitive damages.

The trial court, as appears from the quotation in an earlier part of this opinion, evidently considered the evidence above referred to and found it insufficient to entitle the plaintiff to amend his complaint to the extent of charging that defendant's acts were committed "wilfully," but later—upon what theory does not appear—submitted to the jury in instruction No. 10, set forth in exception 13, the questions of aggravation, wantonness, wilfulness and recklessness on the part of defendant, with a further charge (instruction 15) that the jury might award punitive damages if the facts proved so warranted.   Clearly this was error.   "It is proper to instruct on the question of exemplary damages where there is evidence in the case which warrants their allowance.   On the other hand such an instruction should not be given where no such

damages are claimed, or where the pleadings afford no basis for their allowance." 8 R. C. L., Sec. 207, p. 665; *Potter et al.* v. *Stamfli,* 2 Kan. App. 788, 44 Pac. 46.

Defendant's exceptions 5, 6, 7 and 8 may also be grouped. Taken together they refer to refusals on the part of the court to charge the jury in effect that prior consent to, contemporary acquiescence in, or subsequent ratification of the acts of the defendant by the plaintiff would entitle the defendant to a verdict, as would proof of the commission of the same under license or parol agreement between the parties and as would the payment by defendant and acceptance by plaintiff of rent for the premises in question during the cultivation, bringing to maturity and harvesting of said crop. These requests were refused upon the ground that they were sufficiently covered by the court's instruction number 16. The court's instructions on the subject, 8, 9 and 16, are as follows:

No. 8. "Permission to accomplish any particular enterprise carries with it authority to do all that is necessary to effect the principal object. If you find that Chin Kee either gave defendant permission to cultivate and harvest the crop in question, or accepted rent for the land from defendant while it was in possession, the defendant had authority to make a right of way to the land to accomplish the cultivation and harvesting of the crop. The defendant would be authorized to break through any fence or walls surrounding the property, and if after harvesting the crop the defendant restored the fence or wall, defendant did not commit a trespass on Chin Kee's property by breaking through the fence or wall mentioned, and plaintiff could not recover damages on that account."

No. 9. "A person may, by his conduct, estop or prevent himself from maintaining an action of trespass, inflicted by another. Even if you find that the defendant did commit a trespass on plaintiff's property as alleged in his complaint, yet if plaintiff received and accepted from defendant $40.00, on or about January 19th, 1924

as rent for the use and possession of the land by defendant during the full period of time the crop in question was growing and being harvested, the plaintiff is estopped or prevented by accepting such rental from maintaining this action for trespass, and your verdict should be for the defendant."

No. 16. "If you believe from the testimony in this case that Chin Kee, the plaintiff herein, abandoned the three acres of cane in question, and that the Kaeleku Sugar Company, Limited, defendant herein, then entered into an oral agreement with Chin Kee, the plaintiff, under which the defendant company was authorized by plaintiff to, and did, go upon plaintiff's land, and cultivated, fertilized, brought to maturity, harvested, and appropriated unto itself the sugar cane growing upon the premises in question; plaintiff making no *objection thereto,* but acquiescing therein; and that thereafter by further agreement had between the parties, the defendant company paid to plaintiff the sum of $40.00, as rental for the use of the three acres in question, and that plaintiff had knowledge of the fact, that the $40.00 so paid was, in fact and in truth, rental for the use of said three acres; and with such knowledge accepted the said $40.00; then, in such case, there would be no trespass, and no acts contrary to plaintiff's rights, and your verdict would be in favor of defendant."

Instructions 8 and 9 as above indicated cover part but not all of the matters set forth in defendant's requests. Instruction 16 is a blanket instruction wherein matters requested by the defendant to be charged separately are charged in the conjunctive. Under this instruction, in order to find for the defendant, the jurors would be required to believe from the testimony: (1) That the plaintiff abandoned the three acres of cane in question; (2) that the defendant then entered into an oral agreement with the plaintiff as set forth in said instruction; (3) that the defendant entered upon the land and did the things above set forth under said contract; (4) that plaintiff made no objection thereto but acquiesced

therein; (5) that thereafter by further agreement the defendant paid plaintiff $40 for the use of the three acres in question and (6) that plaintiff accepted said $40 with knowledge that it was rental of said three acres as aforesaid.

Defendant's requests numbered 3, 4, 5 and 6 set forth respectively in exceptions 5, 6, 7 and 8, presented instructions upon separate matters of defense, a finding in conformity with any one of which would have entitled the defendant to a verdict. The defendant was entitled to have these matters charged separately—either in the form requested, or in substantially similar form or in a single instruction setting them forth in the disjunctive. A single instruction setting forth in the conjunctive the six matters above named, with the charge in effect that if the jurors found them all to be sustained by the evidence then their verdict should be for the defendant, did not preserve the defendant's rights in the premises.

In our opinion the trial court was in error in refusing defendant's requests set forth in exceptions 5, 6, 7 and 8 and in giving instruction No. 16 set forth in exception No. 10. The request set forth in exception 9, in our opinion, was sufficiently covered by the court's instruction No. 9 above quoted.

Exception 15 is to the court's refusal to give defendant's requested instruction No. 16 reading as follows:

"The defendant company, not having participated in the act complained of by the plaintiff by express instructions or subsequent ratification, is liable to plaintiff, if at all, only for the actual damages attending the act of the company's employees, if that act was unlawful, and no exemplary or punitive damages can be allowed against defendant."

Exception 16 is to the court's instruction No. 12 as follows:

"You are instructed that a corporation is liable for the

acts of its agents, servants or employees done in the scope of their employment under the direction and the command of the manager of the corporation."

In our opinion, in the circumstances of this case, exceptions 15 and 16 are well taken under the rule laid down by this court in *Kealoha* v. *Halawa Plantation*, 24 Haw. 579. Quoting from pages 588 and 589 of the text of the opinion last above cited: "The court below also found against the defendants in the sum of $2000 for punitive damages. Counsel for the Halawa Plantation, Limited, contend that the company cannot be held liable for punitive damages, even admitting that the trespass was committed by Perry and that he was acting for and on behalf of the company and within the scope of his authority as manager of the plantation. They assert that the limit of the recovery against the company would be the actual damages only. We think in the light of the evidence in this case the court below was unauthorized to assess punitive damages against the defendant Halawa Plantation, Limited. While the defendant Perry as manager of the company's plantation enjoyed a wide range of authority so far as the conduct of the affairs of the plantation was concerned he is not an officer of the company nor is his status in relation to the company such as to make the company answerable in punitive damages for his acts not expressly authorized or approved or ratified by the company. There is no evidence whatsoever that the plantation company either through its officers or any other person actually wielding the executive power of the corporation directed the trespass or in any way approved thereof after it had been committed. The law respecting punitive damages under circumstances such as are presented in this case is very fully expressed by the Supreme Court of the United States in *Lake Shore etc. Ry. Co.* v. *Prentice*, 147 U. S. 101, where the rule is quoted with approval that 'punitive or vindictive damages or smart

money were not to be allowed as against the principal unless the principal participated in the wrongful act of the agent, expressly or impliedly, by his conduct authorizing it or approving it either before or after it was committed.' "

For the reasons above set forth defendant's exceptions 5, 6, 7, 8, 10, 11, 12, 13, 15 and 16 are sustained, as are also exception 14 to instruction 15 permitting in the event named an award in excess of actual damages, and exceptions 17, 18 and 19 with respect to verdict, overruling of motion for new trial, and judgment. Other exceptions are not set forth in detail in this opinion but they have been carefully considered and are overruled, Nos. 2 and 4 because, read in connection with the transcript, they disclose no reversible error, No. 9 because it is sufficiently covered by the court's No. 9 and No. 1 because the refusal to permit the witness to answer the question therein shown to have been propounded, if error, was harmless error for the reason that the testimony thereby sought to be adduced is found elsewhere in the transcript, and was before the jury for consideration.

Verdict and judgment are vacated and set aside and a new trial is granted.

*E. Vincent* for plaintiff.

*H. Edmondson* for defendant.