**WALKER, Collector of Internal Revenue, v. GULF & I. RY. CO. OF TEXAS.**

(Circuit Court of Appeals, Fifth Circuit. January 12, 1921.)

No. 3589.

1. **Internal revenue ⬤➡9—Interest accrued, but not collected, not subject to corporate excise tax; "income."**

Interest accrued, but not actually collected, was not "income," subject to the excise tax imposed by Act Aug. 5, 1909.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Income.]

2. **Internal revenue ⬤➡9—Money advanced subsidiary company to pay operating expenses not deductible in computing excise tax.**

Where a railroad company organized a terminal company and was practically the sole stockholder, but the terminal company was a separate legal entity, with separate books and accounts, and managed by a separate set of officers, and its operations were separately conducted. money advanced by the railroad company to the terminal company with which to pay operating expenses, which the terminal company's income was insufficient to pay, could not be deducted by the railroad company as a part of the ordinary and necessary expenses of the operation of its

business and properties, in computing the excise tax imposed by Act Aug. 5, 1909.

3. Appeal and error &173(4), 719(1)—Demand as condition precedent to action must be urged in lower court and assigned as error.

In an action to recover back taxes paid under protest as illegally collected, the objection that the record fails to show a demand for a refund of the tax, as required by Rev. St. § 3226 (Comp. St. § 5949), cannot be raised in the appellate court, when not raised in the District Court or by the assignments of error.

4. Appeal and error &1140(2)—Reduction of judgment may be directed without new trial.

Where the case was tried by the court, and the facts were agreed upon and found specially by the court, the Circuit Court of Appeals may direct a reduction of the judgment without remanding the case for a new trial.

In Error to the District Court of the United States, for the San Antonio Division of the Western District of Texas; Duval West, Judge.

Action by the Gulf & Interstate Railway Company of Texas against A. S. Walker, Collector of Internal Revenue, Third District of Texas. Judgment for plaintiff, and defendant brings error. Affirmed.

Hugh R. Robertson, U. S. Atty., of San Antonio, Tex. (Carl A. Mapes, Solicitor of Internal Revenue, and John M. Sternhagen, Sp. Atty., of New York City, on the brief), for plaintiff in error.

J. W. Terry and Grady B. Ross, both of Galveston, Tex., and N. A. Stedman, of Austin, Tex., for defendant in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. On May 21, 1915, the defendant in error, the Gulf & Interstate Railway Company of Texas, hereinafter styled Railway, brought suit against A. S. Walker, collector of internal revenue of the United States for the Third district of Texas, to recover the sum of $1,049.45 alleged to have been illegally collected from the Railway by said collector as excise taxes for the years 1911 and 1912 under the Act of Congress of August 5, 1909. 36 Stat. 11, 112. Said sum had been collected from said Railway on an increase in its returns, ordered by the government officials on the ground that the Railway should have included in its return of gross income for the year 1911 $37,087.49, the interest due to it on the note of the Santa Fé Dock & Channel Company (hereinafter styled Terminal Company), said interest not having been actually paid, and that said Railway had also deducted as a part of its expenses of maintenance and operation during said year the sum of $27,478.91 advanced by said Railway to said Terminal Company to meet the deficit in its operating expenses. Had said interest been added to the gross income, and said advance not been deducted as operating expenses, the return of the Railway would have shown a net income, after the specific deduction of $5,000 allowed by law, of $32,737.68, upon which an excise tax of 1 per cent., or $327.38, was due. As to the year 1912 said Railway had not included in its original return of gross income the sum of $47,087.34

representing interest due by said Terminal Company to it upon its indebtedness, and had deducted as a part of its ordinary and necessary expenses of maintenance and operation the sum of $29,338.14 advanced during said year 1912 to said Terminal Company to meet its operating expenses. That had said sum of interest been included and said deduction not been made, it would have left the net income of said Railway, after the specific deduction of $5,000 allowed by law, $72,206.67, upon which the tax of 1 per cent. was due, to wit, $722.07. The said Railway had made a return for each of said years, excluding said interest and including said deduction of said advances to said Terminal Company, which returns showed no net income in excess of the specific deduction of $5,000 allowed by law. It was ordered to amend each of said returns, by including said amounts of interest due, but not collected, and by excluding said advances to said Terminal Company.

On the 11th day of January, 1912, it filed a claim for remission of taxes alleged to be due for the year 1911, and on the 11th of January, 1915, filed a like claim for remission of taxes for the year 1912. On February 1, 1915, it was notified that its claims for remission were rejected. On February 12, 1915, said Railway paid the sum of $327.38 as taxes for the year 1911 and the sum of $722.07 for the year 1912. At the time of making said payment it filed with the internal revenue collector its written notification in regard to each of said taxes, claiming that the same were erroneous, alleging that its original return, showing that it had no taxable income, was correct, but said taxes were paid under protest to avoid the incurring of penalties, and an action would be brought by said Railway to recover the same. Suit was brought, setting up the foregoing facts, and alleging the following as the relations between the Terminal Company and the Railway:

That on or about August 1, 1910, the Railway was the owner of certain docks at Port Bolivar, in Galveston county, Texas, and conveyed the same to the Santa Fé Dock & Channel Company, which was incorporated about October 1, 1910, under the laws of Texas, for the purpose of constructing and operating channels and docks at Port Bolivar and other places on the Texas coast. Said corporation was organized with a capital stock of $50,000, divided into 500 shares, of $100 each. In consideration of said transfer of said docks, said corporation issued to said Railway 495 shares of its said capital stock, and executed to it its note. on October 10, 1910, for $618,124.86, said note bearing interest at the rate of 6 per cent. per annum. Thereafter, on or about January 30, 1912, said Railway made an additional advance to said Terminal Company of $166,664.13, and received from it therefor, and in place of its first note, a note for $784,788.99, bearing interest at 6 per cent. per annum. A large proportion of the business handled by the Railway Company over its railroad during the years 1911 and 1912 was lumber intended for export through Port Bolivar, and to handle said lumber it was necessary for plaintiff either to own or to secure the use of dock facilities at Port Bolivar, Texas. That at all times since the 1st of October, 1910, and during the years 1911 and 1912, the income of the Terminal Company was not sufficient to pay

the expenses necessarily incurred in operating its property, and was insufficient to pay to the Railway any interest on the notes held by it, or any dividend upon its stock, and that it made the advances above mentioned in said several years to enable the Terminal Company to pay its expenses of operation. That these sums were necessary to enable said Terminal Company to continue its operations and to provide dock facilities at Port Bolivar for the use of the Railway. That the Railway was not authorized under the laws of Texas to own and operate docks and channels, and therefore caused said Terminal Company to be incorporated, and the Railway's terminal and dock property to be transferred to it. That practically all of the business done by the Terminal Company has been furnishing and operating said dock facilities for handling freight and passengers transported by said Railway, and that while in some instances a separate charge was made by said Terminal Company against freight handled through said facilities, the handling thereof was necessary to the transaction of said Railway's business, as also was the use of the property and facilities of said Terminal Company.

These averments were all incorporated in an agreed statement of facts and found by the court to be true, and it was also agreed and found that the Terminal Company did not at any time up to the date of said finding, to wit, January 27, 1920, pay any part of the indebtedness evidenced by said note, nor any interest due thereon, nor had it ever repaid to said Railway any part of the amounts advanced to it by said Railway to meet its deficit in operating expenses for the years 1911 and 1912; nor has it since 1912 collected sufficient revenue to pay its expenses of operation, and in each of said years plaintiff has advanced to said Terminal Company additional sums to pay said deficits. The case was submitted to the court without the intervention of a jury upon the above statement of facts, which were found by the court, which thereupon found in favor of the Railway against the collector for the entire amount of the taxes paid for each of said years.

The case is brought here on two assignments of error: First, that the court erred in rendering judgment in favor of the plaintiff; second, that the court erred in holding that the sums advanced by the Railway to the Terminal Company during the years 1911 and 1912 were properly deducted as legitimate expenses of operating the business of a Railway during the said years, and in holding that such deductions should have been allowed by the defendant as collector of internal revenue.

[1] In the court below it was conceded that interest which had accrued, but had not been actually collected, did not constitute taxable income under the said act of Congress. We do not understand that it is contested here. The question has been clearly put at rest, and the concession is sustained, by the case of Maryland Casualty Co. v. United States, 251 U. S. 342, 354, 40 Sup. Ct. 155, 64 L. Ed. 297.

In the return of 1911 it is necessary to include the amount of interest due, but not collected, to wit, $37,087.49, in order to show any net income over and above the $5,000 exemption, even if the $27,478.81 advanced to the Terminal Company should not have

been deducted as a part of the operating expenses of the Railway. The above decision that interest not actually received is not required to be included in return of gross income disposes of so much of the case as rests upon the taxes of 1911, and shows that the sum collected therefor, to wit, $327.38, was not due, and that a judgment for this sum was properly awarded the plaintiff.

Likewise, in regard to the taxes for 1912, $47,087.72 of the amount, upon which the taxes for that year were computed, consist of interest not collected. Deducting this sum from the return as revised by the collector will leave a net income (after the specific deduction of $5,000 allowed by the statute) of $25,119.33, 1 per cent. of which would be $251.19. If, therefore, the contention of the government that the amount of advances made to the Terminal Company by the Railway as a part of its operating expenses is sound, the Railway Company was liable for $251.19, and the judgment rendered against the collector for the year 1912, instead of being for the full amount, should be only for $470.87, namely, the 1 per cent. computed upon the amount of the interest item erroneously added.

[2] We do not think that the facts of this case warrant the conclusion of law that the amounts advanced by the Railway to the Terminal Company can be properly charged by it as a part of the ordinary and necessary expenses of maintenance and operation of its business and properties. While the Railway Company is practically the sole stockholder and was the organizer of the Terminal Company, so far as this record shows, the operations of the Terminal Company are separately conducted, and, as stated by the Internal Revenue Collector, it is a separate legal entity, its books and accounts are kept separately, and it is managed by a separate set of officers. The sums appear to be charged on the books of the Railway Company as advances to the Terminal Company and as a debt due by it, and to be so carried on the books of the Terminal Company.

We do not think that its facts bring this case within the principle of Southern Pacific Co. v. Lowe, 247 U. S. 330, 38 Sup. Ct. 540, 62 L. Ed. 1142, or Gulf Oil Corporation v. Lewellyn, Collector, 248 U. S. 71, 39 Sup. Ct. 35, 63 L. Ed. 133. In Southern Pacific Co. v. Lowe, the Southern Pacific Company was the lessee of the property of the Central Pacific Railroad Company. All of the money from which the dividends were declared had been collected and was held by the lessee. The lessee was the sole stockholder of the lessor. Early in 1914 dividends were declared and paid out of the earnings accumulated prior to January 1, 1913, and consisting principally of a debit against the Southern Pacific Company.

"But the payment was only constructive, being carried into effect by bookkeeping entries which simply reduced the apparent surplus of the Central Pacific and reduced the apparent indebtedness of the Southern Pacific to the Central Pacific by precisely the amount of the dividends. The question is whether the dividends received under these circumstances and in this manner by the Southern Pacific Company were taxable as income of that company under the Income Tax Act of 1913."

In holding that the dividend was not taxable as income accruing commencing with the 1st day of March, 1913, the court say:

"We base our conclusion in the present case upon the view that it was the purpose and intent of Congress, while taxing 'the entire net income arising or accruing from all sources' during each year, commencing with the 1st day of March, 1913, to refrain from taxing that which, in mere form only, bore the appearance of income accruing after that date, while in truth and in substance it accrued before, and upon the fact that the Central Pacific and the Southern Pacific were in substance identical because of the complete ownership and control which the latter possessed over the former, as stockholder and in other capacities. While the two companies were separate legal entities, yet in fact and for all practical purposes they were merged, the former being but a part of the latter, acting merely as its agent and subject in all things to its proper direction and control. And, besides, the funds represented by the dividends were in the actual possession and control of the Southern Pacific, as well before as after the declaration of the dividends. The fact that the books were kept in accordance with the provisions of the lease, so that these funds appeared upon the accounts as an indebtedness of the lessee to the lessor, cannot be controlling, in view of the practical identity between lessor and lessee. * * * The case turns upon its very peculiar facts, and is distinguishable from others in which the question of the identity of a controlling stockholder with his corporation has been raised. Pullman Car Co. v. Missouri Pac. Ry. Co., 115 U. S. 587, 596; Peterson v. Chicago, Rock Island & Pac. Ry. Co., 205 U. S. 364, 391."

The case of Gulf Oil Corporation v. Lewellyn, Collector, 248 U. S. 71, 39 Sup. Ct. 35, 63 L. Ed. 133, rests on the same principle, to. wit, that the dividends did not represent, in fact, income arising or accruing since March 1, 1913.

"We are of opinion that the decision of the District Court was right. It is true that the petitioner and its subsidiaries were distinct beings in contemplation of law, but the facts that they were related as parts of one enterprise, all owned by the petitioner, that the debts were all enterprise debts due to members, and that the dividends represented earnings that had been made in former years and that practically had been converted into capital, unite to convince us that the transaction should be regarded as bookkeeping rather than as 'dividends declared and paid in the ordinary course by a corporation.'"

The companies had no money, all of their funds were invested in properties or actually required to carry on their business, and the dividends were merely a method of transferring to the books of the parent company the earnings and surplus on the books of the subordinate companies. The court say:

"The earnings thus transferred had been accumulated and had been used as capital before the taxing year. Lynch v. Turrish, 247 U. S. 221, 228."

In this case, however, there is a loan from one company to another. It is carried on the books of each company as an advance by one still owed by the other, and the question here is: Can the creditor company deduct it from its gross income as a part of its ordinary expenses of operation, simply because of its stock ownership in the other company and their intimate business connection? We conclude that the two corporations were separate legal entities (Peterson v. Chicago, Rock Island & Pac. Ry., 205 U. S. 364, 391, 27 Sup. Ct. 513, 51 L. Ed. 841; Pullman's Palace Car Co. v. Missouri Pac. Co., 115 U. S. 587, 597, 6 Sup. Ct. 194, 29 L. Ed. 499), and that the sum advanced by the Railway to the Terminal Company was not properly deducted as a part of the Railway's operating expenses.

[3] The question was raised in this court that the record failed to show a demand for a refund of the tax after its payment as required by Rev. St. § 3226 (Comp. St. § 5949). This case is not like that of Rock Island, Arkansas & Louisiana R. R. Co. v. United States, 54 Ct. Cl. 22, recently affirmed by the United States Supreme Court, 254 U. S. 141, 41 Sup. Ct. 55, 65 L. Ed. ——. There as both courts point out, the payment was without protest, or any notice that the refusal to abate was not acquiesced in. Here, when making the payments, the Railway filed its written notice, claiming that each assessment was erroneous, that the original return showing no tax to be due was correct, that the tax was paid under protest to avoid incurring the penalties, and that an action would be brought by the Railway to recover the same. This might well be considered a demand for a refund on payment under protest. But, regardless of that, no such question was raised in the District Court, nor by the assignments of error. Had it been, it might have been met by further allegation and proof, if such were necessary. We do not think it can be raised here for the first time. Retzer v. Wood, Collector, 109 U. S. 185, 3 Sup. Ct. 164, 27 L. Ed. 900; Green County v. Thomas' Executor, 211 U. S. 598, 602, 29 Sup. Ct. 168, 53 L. Ed. 343.

[4] This case being tried by the court, and the facts being agreed upon and specially found by the court, there is no reason for remanding the case for a new trial; but the judgment rendered can be directed to be modified in accordance with the above ruling as to the advances made by the Railway to the Terminal Company. Feilman v. Royal Ins. Co., 184 Fed. 577, 106 C. C. A. 557; Fort Scott v. Hickman, 112 U. S. 150, 165, 5 Sup. Ct. 56, 28 L. Ed. 636.

The judgment in favor of the plaintiff should be reduced to the extent of deducting $251.19 from the amount of taxes paid, thus making the sum for which judgment should have been entered $798.56, with interest thereon to date of judgment (June 14, 1920), to wit, $1,054.97, and the judgment reduced to this amount, and, so modified, is affirmed.