BILLY HOWELL *v.* ASSOCIATED HOTELS, LTD., A HAWAIIAN CORPORATION, DOING BUSINESS AS NIUMALU HOTEL, AND GENE BOWERS.

NOS. 2917 AND 2940.

ARGUED MARCH 18, 1954.                DECIDED APRIL 6, 1954.

TOWSE, C. J., LE BARON AND STAINBACK, JJ.

OPINION OF THE COURT BY STAINBACK, J.

This is an action at law brought by plaintiff to recover damages caused him by reason of the alleged wrongful withholding from him of certain personal property, namely, eighteen ektrachrome transparencies.

Plaintiff claims that the retention and withholding of the ektrachrome transparencies was wrongful and oppressive and without justification of law and seeks to recover therefor $4,419.10 as compensatory damages and $2,500 as exemplary damages.

The case was tried before a jury which returned a verdict for punitive damages in the sum of $1,850 and no special damages.

Without reviewing the evidence in detail, the testimony of plaintiff and his witnesses was that defendant Gene Bowers was the manager of Associated Hotels, Limited, which owns and operates the Niumalu Hotel at Waikiki; that early in February, 1950, Gene Bowers, who was acquainted with plaintiff's work, telephoned him asking him to bring over to the hotel to show some guests certain of his colored transparencies. Transparencies are used in commercial advertising, colored prints being made therefrom. The guests were certain newspaper men from the mainland. Pursuant to this request the plaintiff took eighteen transparencies to the Niumalu Hotel and deposited them with the defendant Bowers; Bowers said he would turn them over to these particular guests who might be interested in buying some of them. Two or three days later plaintiff went to the hotel and asked

the defendant Bowers about the transparencies; Bowers stated the guests did not want them, and when asked for their return stated he could not find them, asking the plaintiff to return later. Plaintiff did come back on several occasions and still Bowers stated he could not find them; on the final visit of plaintiff he suggested that one of the mainland guests might have taken them to New York. Plaintiff wrote to New York but the guests stated in their reply that the transparencies had not been taken away by them. Thereupon, on May 20, 1950, plaintiff made a formal demand for the return of his property. Plaintiff sent the demand for the value of the pictures to the Niumalu Hotel to which Bowers replied that they did not have the transparencies in their possession. Thereafter written demand was made upon the defendants for the return of the pictures; the pictures were not returned; suit was instituted for the recovery of the transparencies on August 19, 1950. In January, 1951, the case was set for trial on April 16, 1951.

About a week prior to the time set for the trial of the case, defendants through their attorneys returned the transparencies to the plaintiff. Thereupon the plaintiff discontinued the suit for the recovery of the transparencies and instituted the present proceedings.

In the present case the defendants claim that the pictures were misplaced in the cabinet at the hotel desk underneath the key rack and that they were guilty at most of negligence.

However, it appears from the evidence that Bowers made little or no effort to find and restore the transparencies as he stated on cross examination he did not consider that his problem and, further, called the plaintiff's efforts to secure the return of his transparencies "nagging." It further appears from the evidence that Bowers had had the pictures in his possession more than one

time as he had testified, and according to the testimony of an employee of defendants the pictures had been found long prior to the time of their return to plaintiff.

The main errors relied upon by the defendants-plaintiffs in error are that a verdict should have been directed for defendants on the ground that there was not sufficient evidence to submit the case to the jury and that there was not sufficient evidence to submit the question of punitive damages to the jury and, further, that punitive damages cannot be awarded where there is an express finding denying actual damages, and that the punitive damages were excessive.

The court below rightly instructed the jury that mere negligence in detention and failure to return the transparencies were not sufficient. The act must be done intentionally, etc. Under the instructions the jury must have found that the defendants intentionally withheld the property from plaintiff.

This court has held innumerable times that the credibility of witnesses and the weight of testimony are matters for the jury and when there is more than a scintilla of evidence to sustain the verdict, it will not be disturbed.

We cannot say that there was not more than a scintilla of evidence to sustain the verdict of the jury in finding for the plaintiff when the jury had the duty of weighing the testimony in the light of all the surrounding circumstances. Frequently acts speak louder than words.

A more difficult question is whether the jury could award exemplary or punitive damages in the absence of an award for compensatory damages. The authorities are divided on this question and as there has been no local decision squarely on this subject we may choose that which appears more reasonable in promoting justice.

Exemplary or, as they are sometimes called, punitive damages may be recovered when a wrongful act is done

willfully, wantonly or maliciously or is characterized by some aggravating circumstances. (15 Am. Jur., Damages, § 279, p. 716.)

That exemplary damages may be awarded for wanton and malicious injuries to or wrongful taking of personal property see 15 American Jurisprudence, Damages, section 274, page 710.

Although this rule is not universal with respect to injury to property, it has been followed in Hawaii. (*Bright* v. *Quinn,* 20 Haw. 504; *Bernard* v. *Loo Ngawk,* 6 Haw. 214; *Chin Kee* v. *Kaeleku S. Co.,* 29 Haw. 524.)

As stated in the case of *Chin Kee* v. *Kaeleku S. Co., supra,* in actions for injuries to persons, vindictive damages may be awarded, but in trespass to property special misconduct and aggravation must appear if the plaintiff is to obtain other than actual compensation and the claim for punitive damages must be alleged in the pleadings.

According to the weight of authority, punitive damages may be recovered although the actual damages found are only nominal in amount. (15 Am. Jur., Damages, § 271, p. 708.)

In the same volume and under the same heading (section 270, pages 706, 707) in a discussion of the rule of necessity for actual damages as a predicate to the award of exemplary damages, it is stated: "Assuming that exemplary damages are not recoverable in the absence of a showing of actual damages, it becomes essential to determine whether the money extent of the actual damages must be found in order to sustain a finding of punitive damages. Upon this question the authorities are in conflict. The position taken in many cases * * * is that in order to sustain an award of punitive damages, the plaintiff must have alleged, proved, and been awarded actual damages. * * * Some cases, on the other hand, recognize a more liberal rule, taking the view that if actual damage

is shown, even though its amount is not shown or found, exemplary damages may be awarded * * *. In other words, after actual damage is shown it is unnecessary to show its money extent to sustain the, judgment for exemplary damages. It is not * * * necessary that the compensatory damages be capable of exact calculation in order that the plaintiff may recover exemplary damages * * *."

The cases set out that the reason for the rule requiring actual damages as a prerequisite for the recovery of exemplary damages is that a private action cannot be maintained merely to inflict punishment upon the wrongdoer. On the other hand, the cases supporting a verdict for punitive damages, where there are no actual damages or they are merely nominal, take the position that if a cause of action is made out which shows an infraction of a legal right of plaintiff exemplary damages may be recovered under proper circumstances despite the fact that the injury gives rise to no pecuniary damage or loss capable of exact measurement in money.

It would be useless to discuss the numerous and conflicting decisions relative to the recovery of punitive damages where there has been no assessment of pecuniary loss. Possibly the majority of the cases hold that actual damage must be found to sustain an award of exemplary damages or at least proof of actual damage must be shown even though the actual extent of the money damages may not be possible of ascertainment. However, the better rule would be to permit such exemplary damage where there has been a cause of action established by plaintiff even though the damage is incapable of being measured by a money standard or perhaps cannot be shown at all.

As stated in *Wardman-Justice Motors* v. *Petrie,* 39 F. (2d) 512, 516, quoting from *Press Pub. Co.* v. *Monroe,* 73 Fed. 196, 201: " 'There is room for argument against

the allowance of exemplary damages at all as anomalous and illogical. Some courts have held that it is unfair to allow the plaintiff to recover not only all the loss he has actually sustained, but also the fine which society imposes on the offender to protect its peculiar interests. But if it be once conceded that such additional damages may be assessed against the wrongdoer, and, when assessed, may be taken by the plaintiff — and such is the settled law of the federal courts — there is neither sense nor reason in the proposition that such additional damages may be recovered by a plaintiff who is able to show that he has lost $10, and may not be recovered by some other plaintiff who has sustained, it may be, far greater injury, but is unable to prove that he is poorer in pocket by the wrongdoing of defendant.' " This latter case (*Press Pub. Co.* v. *Monroe*, 73 Fed. 196, 201) refused to follow certain Texas cases as "the law of that state is peculiar on the subject of exemplary damages * * *. They are, however, plainly at variance with the theory upon which exemplary damages are awarded in the federal courts, namely, as something additional to, and in no wise dependent upon, the actual pecuniary loss of the plaintiff, being frequently given in actions 'where the wrong done to the plaintiff is incapable of being measured by a money standard.' Day v. Woodworth, supra [13 How. 370] ; Wilson v. Vaughan, 23 Fed. 229."

A discussion of the recovery of exemplary damages in the absence of recovery of compensatory damages is contained in 5 Southwestern Law Journal 468 (1951). This discussion points out that the question is often confused by the employment of loose terminology. It agrees that there must first be established a cause of action independent of the claims for exemplary damages and except where actual damage is one of the essential elements of the cause of the action exemplary damages should be awarded

under proper circumstances. The article points out that there are many cases in which a showing of actual damage is not essential to the maintenance of the suit. "Examples of such actions are those for trespass to realty, actions for the recovery of realty or personalty, certain defamation actions, and actions in which equitable relief is sought." The article refuses to follow what may be called the Texas doctrine and quotes with approval that for every unlawful trespass the injured party is entitled to at least nominal damages, and further quotes McCormick on *Damages* as follows: "Consequently, it seems desirable to recognize the principle that, if a cause of action is found to exist by the jury, in a case where 'actual' damage is not an essential element of the cause of action, then, if the necessary culpability on defendant's part be established, a verdict for exemplary damages is proper, though the award of other damages is nominal or absent entirely." (McCormick, *Damages* 294 [1935].)

Where the purpose is the vindication of a legal right it would seem purely technical and not a promotion of justice to hold that where the damages are actual, exemplary damages may be awarded though if merely nominal exemplary damages may not be.

If " 'the fundamental purpose underlying an award of exemplary . . . damages . . . is to punish the wrongdoer in order that such punishment may serve as a warning and example to prevent him and others from the commission of like offenses and wrongs in the future * * *' [*Burlington-Rock Island R. Co.* v. *Newsom,* 239 S. W. (2d) 734]" the recovery of nominal damages will not have the desired deterrent effect as to future offenses and the offender will not be punished. "Finally, the compensatory effect of exemplary damages probably tends to remedy a weakness in the law of compensatory damages, which often fails fully to make recompense for the in-

jury usually resulting to a plaintiff from the defendant's wilful, wanton, malicious, or oppressive conduct." (5 Southwestern Law Journal 468 at 474.)

In other words, where the plaintiff had proved a violation of a legal right, he should be able to recover punitive damages if the case is such as would call for punitive damages.

In the present case it would seem that the plaintiff must necessarily have sustained actual damages though they were not capable of exact ascertainment justifying an award by the jury. He was a professional photographer, making his living by selling his films; he was deprived of the possibility of selling any of these eighteen films during the year or more that they were "deliberately and maliciously" detained by defendants. There was, and probably there could be, no evidence to show clearly and definitely how many of these ektrachromes plaintiff might have sold or what profit he could have made thereon. The verdict can, therefore, be justified on the ground that actual damage has been shown "even though the amount is not shown or found." (18 Am. Jur., Damages, *supra.*)

As to the defendants' claim that the punitive damages awarded are excessive, in the defendants' brief the statement is made "Admittedly, there is no prescribed rule of mathematical proportion by which punitive damages can be gauged, 25 C. J. S., *Damages,* Sec. 126, p. 737, but in the majority of jurisdictions in the United States, the rule has been laid down that punitive damages must bear some reasonable proportion to the amount of actual damage sustained, taking into consideration the injury complained of."

The rule set forth in 15 American Jurisprudence, Damages, section 270, pages 706, 707, "While punitive damages must bear some relation to the injury inflicted

and the cause thereof, they need not bear any relation to the damages allowed by way of the compensation."

The article in 5 Southwestern Law Journal, *supra,* also discusses the doctrine that punitive damages must bear some relation to compensatory damages and points out that the same arguments made against the requirements of recovery of actual damages before there can be an award of punitive damages apply with equal force to the requirement of a reasonable relationship of punitive to actual damages. "The measure of exemplary damages should be the degree of malice, oppression, or gross negligence which forms the basis for the award and the amount of money required to punish the defendant, considering his financial condition. These factors bear no necessary relationship to the actual damages awarded." The amount is primarily a question for the jury whose verdict will not be lightly disturbed.

Another prejudicial error alleged by defendants-appellants was the introduction into evidence of certain communications between plaintiff and the New York reporters who had been guests at the Niumalu Hotel. These were letters and cablegrams requesting information and the replies thereto regarding the ektrachrome transparencies which Bowers had suggested as possibly having been taken to New York by the reporters. Clearly there is no reversible error or "self-serving statements" by these visitors writing they had not taken the pictures away. Defendants at the trial made no claim that the transparencies had ever been out of their possession or taken to New York.

Counsel had alleged in the pleadings and set forth in his opening statement to the jury a claim for $750 as an attorney's fee as an item of special damages in recovering the films. When an effort was made to introduce evidence as to this fee and the objection to evidence upon

it was sustained, an attempt to amend the pleadings by claiming $750 additional punitive damages was made. This was disallowed. Counsel for defendants thereupon made a motion for a mistrial because of alleged misconduct of counsel. As the jury had already been told of the claim for attorney's fees it is not as though counsel were trying to get before the jury indirectly a matter of which it had no prior knowledge. The court had ruled that the attorney's fee was not an item of damage and the presumption is that the jury did not disregard the court's ruling. The overruling of this motion by the trial court was not error.

Exceptions overruled.

*W. L. Fleming* (*Smith, Wild, Beebe & Cades* with him on the briefs) for appellant Associated Hotels, Ltd.

*H. C. Schnack* (*F. Schnack* with him on the briefs) for appellant Gene Bowers.

*J. F. Dyer* (*Hogan & Dyer* on the brief) for appellee Billy Howell.