LAWRENCE S. C. KANG, Plaintiff-Counterclaim Defendant-Appellee, *v.* W. DEWEY HARRINGTON, Defendant-Counterclaim Plaintiff-Appellant

NO. 6031

NOVEMBER 13, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY RICHARDSON, C.J.

Appellant, W. Dewey Harrington, appeals from the judgment of the circuit court of the first circuit finding him culpable of fraud with respect to a certain rental agreement. The judgment resulted in the reformation of that agreement and an award of $20,000 punitive damages and $1,800 compensatory damages to appellee, Lawrence S. C. Kang.

Appellee is the owner of a house and lot located at 2927 Hibiscus Place, Honolulu, Hawaii. Appellee's daughter, Dolly Won, lives at 3052 Hibiscus Drive, Honolulu, Hawaii, situated adjacent to the 2927 Hibiscus Place property.

On October 28, 1973, Dolly Won, acting as the agent of appellee, advertised the 2927 Hibiscus Place property as available for rental. On October 29, 1973, Dolly Won met appellant who indicated that he was interested in renting the property. Dolly Won advised appellant that the rent was $450 per month and that no dogs were permitted. Appellant then mentioned that he would be willing to make certain improvements to the property if his dogs would be allowed.

At their next meeting, appellant showed Dolly Won a sketch of the proposed improvements. Appellant stated that he would construct a wall along the ewa (west) side of the property, another wall along the common boundary between the 3052 Hibiscus Drive property and the 2927 Hibiscus Place

property and do some terracing and landscaping of the grounds. Consequently, Dolly Won agreed to rent the 2927 Hibiscus Place property to appellant for one year, to permit appellant's dogs and to reduce the rent to $400 per month because of the proposed improvements. Appellant also received an option for an additional one-year term and first consideration in the event that the property was available after the expiration of the second year.

Dolly Won then requested a security deposit of $400 in cash. On November 2, 1973, appellant gave Dolly Won the deposit and a letter of intent which was subsequently signed by both appellant and Dolly Won. The letter, however, stated that the $400 was for the first month's rent of the "house and property located at 3052 Hibiscus from November 6, 1973 for a period of one year with an additional option for a second year at four hundred dollars per month ($400.00) inclusive." Prior to signing the letter the parties revised it to state that the $400 was a security deposit rather than the first month's rent. But no mention was made of the fact that the 3052 Hibiscus Drive property was referred to in the letter instead of the 2927 Hibiscus Place property. Dolly Won then produced the appropriate rental forms but acceded to appellant's request that he be allowed to take them with him to type up at his office.

Appellant returned on November 3, 1973, and gave Dolly Won two copies of the typed-up rental forms to sign. Appellant told Dolly Won that he was in a hurry. Consequently, she initialed and signed all the documents in "a couple minutes" without reading them carefully. The rental agreement prepared by appellant contained an additional provision giving him a perpetual option to rent the 2927 Hibiscus Place property instead of the agreed upon one-year option. The pertinent part of the agreement read as follows:

> 4. Landlord agrees and tenant accepts this lease as a one year lease commencing on November 6, 1973 and ending on November 5, 1974, however at tenants option this lease may be extended for additional similar periods (one year) for the same monthly rate of $400.00 per month. Options are effected by tenants notifying landlord 30 days prior to the expiration date of each year's lease.

Upon taking occupancy of the premises appellant began to make various improvements in addition to the previously agreed upon walls and landscaping. This included, *inter alia*, the enclosure of a patio with screens and sliding glass doors, construction of a concrete patio, electrical and plumbing work, interior repainting and the installation of a picture window, chandelier, sink and appliances.

On or about February 11, 1974, appellant sent a letter to Dolly Won mentioning his long-term intentions with regard to the 2927 Hibiscus Place property and the fact that he had spent and would continue to spend substantial amounts of money to improve the property. On October 3, 1974, Dolly Won received another letter from appellant stating that he had elected to renew his "option for the following year and for many, many years."

On November 25, 1974 appellee filed suit against appellant seeking to reform the rental agreement to limit the option provision to one year and for compensatory damages of $20,000 and punitive damages of $20,000. Appellant answered by alleging that the parties did, in fact, agree to a long-term lease and that appellee had committed an assault and battery against appellant. Appellant sought to reform the rental agreement to provide for a valid fifty-five year lease or declare that the lease was terminated and award appellant his out-of-pocket costs for the improvements. Appellant also sought $30,000 punitive damages for appellee's alleged fraud in construing the rental agreement to relate only to a one-year option and $30,000 punitive damages for appellee's alleged assault and battery against appellant.

The case was heard in the circuit court of the first circuit without a jury. The trial court held that appellant had committed a fraud against appellee in attempting to obtain a perpetual or long-term lease of the 2927 Hibiscus Place property. The rental agreement was reformed to provide for a one-year term with an option for an additional one-year term. Appellee was also given $1,800 compensatory damages and $20,000 punitive damages. The court also held that appellee did not commit an assault and battery against appellant.

On appeal, appellant seeks to set aside the judgment of

the circuit court and obtain a new trial. Appellant raises three issues.[1]

    I. Whether the trial court erred in finding that appellant had committed a fraud against appellee.

    II. Whether the trial court erred in awarding $20,000 punitive damages to appellee.

    III. Whether the trial court erred in refusing to award appellant his out-of-pocket costs for the improvements on the 2927 Hibiscus Place property.

## I.

To support a finding of fraud, it must be shown that "the representations were made and that they were false, . . . [and] that they were made by the defendant with knowledge that they were false, (or without knowledge whether they were true or false) and in contemplation of the plaintiff's relying upon them and also that the plaintiff did rely upon them." *Hong Kim v. Hapai,* 12 Haw. 185, 188 (1899).

In dealing with written contracts, the standard of proof with respect to a showing of fraud is extremely high. A written contract will be cancelled because of fraud only in a "clear

---

[1] Appellant's opening brief lists other "specifications of error." However, pursuant to rule 3(b) (3) of the Rules of the Supreme Court, issues not contained within the statement of questions presented will be disregarded. Consequently, appellant's other "specifications of error" will be disregarded.

Appellant also fails to present any arguments in support of most of his alleged "specifications of error."

    Appellant has the burden of sustaining his allegations of error against the presumption of correctness and regularity that attend the decision of the lower court. "* * * the burden of showing error is on the plaintiffs in error. We necessarily approach a case with the assumption that no error has been committed upon the trial and until this assumption has been overcome by a positive showing the prevailing party is entitled to an affirmance."

Ala Moana Boat Owners v. State, 50 Haw. 156, 158, 434 P.2d 516, 518 (1967) citing Territory v. Kobayashi, 25 Haw. 762, 766 (1921); Kaehu v. Namealoha, 20 Haw. 350 (1911); Kalamakee v. Wharton, 19 Haw. 472 (1909); Pioneer Mill Co. v. Hart, 18 Haw. 674 (1905); Keliiilihune v. Vierra, 13 Haw. 28 (1900). Thus, since no arguments have been presented with respect to certain of the alleged "specifications of error", the assumption of correctness must stand.

case and upon strong and convincing evidence." *Soares v. Freitas,* 38 Haw. 64, 65, 66 (1948).

In the instant case, there was a sharp conflict in the testimony of the parties and the other witnesses. Appellant testified that he put the perpetual option provision in because he anticipated a long-term lease. Dolly Won, however, testified that the parties had only agreed to a one-year term with a one-year option for renewal. In light of the conflicting evidence, the trial court specifically found that appellant and his witnesses were not credible. Consequently, the trial court rejected their testimony except when corroborated by other credible evidence. The finding of the trial court with respect to the credibility of the witnesses will necessarily be deferred to. H.R.Civ.P. Rule 52(a) (1972).

The credible evidence accepted by the trial court indicates that appellee, through his agent, Dolly Won, and appellant actually agreed to a one-year rental term with a one-year option for renewal.

The credible evidence also indicates that although appellant was aware of this agreement he, nevertheless, entered into certain acts found by the trial court to be in furtherance of his scheme to obtain a perpetual option or long-term lease of the 2927 Hibiscus Place property. The findings of fact by the trial court with respect to appellant's fraudulent acts are supported by the accepted evidence and are not "clearly erroneous." H.R.Civ.P. Rule 52(a) (1972).

First, appellant was to submit a letter of intent and $400.00 as a security deposit to appellee pursuant to their oral agreement to lease the 2927 Hibiscus Place property for a period of one year with an option for an additional year. Instead, appellant's letter of intent referred to the 3052 Hibiscus Drive property and stated that the $400.00 was for the first month's rent rather than as a security deposit. Although Dolly Won corrected the letter to state that the $400.00 was a security deposit, she failed to notice and correct the fact that the letter referred to the 3052 Hibiscus Drive property instead of the 2927 Hibiscus Place property. The trial court made the finding of fact that appellant intentionally referred to the 3052 Hibiscus Drive property believing that Dolly Won would not

notice the inaccurate address. Appellant included the wrong address since, if the letter had correctly referred to the 2927 Hibiscus Place property, it would have negatived appellant's claim to a perpetual option.

Second, in preparing the rental agreement appellant added an extra provision giving him a perpetual option to lease. Then, under the pretext of pressure of time, appellant obtained the hurried approval of Dolly Won without allowing her an opportunity to review and scrutinize the contract.

Third, to support his claim of a perpetual option appellant made numerous improvements to the 2927 Hibiscus Place property other than the ones initially agreed upon.

Finally, in addition to appellant's fraudulent rental agreement and letter of intent, the trial court looked to other acts of appellant which supposedly also constituted his fraud on appellee and made the following findings of fact:

> (d) In further pursuance of such fraudulent scheme, Defendant prepared Exhibit 3, which is a xerox copy of a wall plan showing not only the improvements referred to in Findings of Fact No. 4, above, but also many other improvements which had not been previously discussed with agent. This exhibit was intended to support Defendant's claim of a long-term lease and to justify his corollary claim of having expended large sums of money on improvements approved by Plaintiff. In fact, this wall plan was never received by agent and the signature on this exhibit although ostensibly that of agent was placed thereon by Defendant;
>
> (e) Defendant also prepared a letter dated November 9, 1973 (Exhibit 4) addressed to agent, which referred to a wall plan approved by agent on November 8, 1973. Neither this letter nor the wall plan referred to in the letter were received by agent but part of Defendant's fraudulent scheme to obtain a long-term lease . . .

Findings of Fact No. 5(d), (e).[2]

---

[2] Since these findings of fact describe conduct of appellant which was not known to appellee before trial, they might also be construed as constituting part of appellant's fraud on the court rather than his fraud on appellee. However, we conclude,

Although Dolly Won may have been negligent in failing to correct the letter of intent and the rental agreement and in failing to notice the various improvements, this will not negative appellant's alleged fraud.

> [W]here it appears that one party has been guilty of an intentional and deliberate fraud, by which, to his knowledge, the other party has been misled, or influenced in his action, he cannot escape the legal consequences of his fraudulent conduct by saying that the fraud might have been discovered had the party whom he deceived exercised reasonable diligence and care.

*Cummins v. Cummins*, 24 Haw. 116, 122 (1917) *quoting from Linington v. Strong*, 107 Ill. 295, 302 (1883). *See also Anderson v. Knox*, 297 F.2d 702, 711 (9th Cir. 1961).

Thus, the evidence accepted by the lower court indicates that appellant and appellee did agree to a one-year lease with a one-year option of the 2927 Hibiscus Place property. Notwithstanding this agreement the evidence shows that appellant entered into a fraudulent scheme to acquire a perpetual option to lease the subject property. In light of appellant's actions, the lower court did not err in concluding that appellant had committed a fraud on appellee.

II.

The trial court specifically found that appellant's fraud and acts in furtherance of that fraud were of such a wilful, malicious, wanton and aggravated nature and so recklessly indifferent to appellee's rights to justify the assessment of $20,000 punitive damages. But it seems that in making that determination, the trial court may have been influenced by

---

*infra,* that even if the conduct of appellant described by these findings of fact were part of appellant's fraud on appellee, the fraudulent conduct of appellant did not warrant a punitive damage award of $20,000. Further, we are of the opinion that findings of fact No. 5(d) and (e) are not essential for our conclusion that the trial court correctly found that appellant did perpetrate a fraud upon the appellee. Consequently, we need not decide whether the conduct should be viewed as part of appellant's fraud on the court rather than a part of his fraud on appellee.

appellant's actions in attempting to perpetrate a fraud on the court as well as appellant's fraud on appellee.

At the conclusion of the trial the court issued the following statement from the bench:

> THE COURT: Based on the evidence adduced, the Court makes the following findings: one, the credibility in this case of the witness for the defendant and the defendant himself is unreliable, and the Court finds that he should not be believed except as corroborated by other testimony in this case.
>
> The Court finds that the defendant and his witnesses have sought to impose fraud on this Court as well as the plaintiff in this case; that they intentionally and willfully intended and conceived a course of conduct to deprive plaintiff of his real property, save and except those rights as may arise from the rental agreement.

Tr. at 428 (June 4, 1975).

The distinction between appellant's fraud on the court and his fraud on appellee is crucial since a finding of fraud on the court is unrelated to the fraud on appellee and will not provide a basis for an award of punitive damages. In assessing punitive damages the trial court should have ignored appellant's fraud upon the court and looked only to his fraud on appellee. The appropriate action to be taken in a case of fraud upon the court is for the injured party to maintain an independent action based on that fraud and seek to be relieved from the judgment of the court. H.R.Civ.P. Rule 60(b). *See e.g. Ellis v. Crockett,* 51 Haw. 45, 59, 451 P.2d 814, 823 (1969).

But even the finding of fraud of appellant on appellee will not necessarily result in an award of punitive damages. Punitive damages are in no way compensatory and are not available as a matter of right. An award of punitive damages is purely incidental to the cause of action. They may be awarded by the grace and gratuity of the law. They also act as a means of punishment to the wrongdoer and as an example and deterrent to others. *Sebastian v. Wood,* 246 Iowa 94, 66 N.W.2d 841 (1954). Punitive damages may be awarded only in cases where the wrongdoer " 'has acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal

indifference to civil obligations'; or where there has been 'some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences.' " (Citations omitted). *Bright v. Quinn*, 20 Haw. 504, 512 (1911).

In *Anderson v. Knox*, 297 F.2d 702 (9th Cir. 1961), the court applied the rule of *Bright v. Quinn, supra,* in affirming an award of punitive damages. *Anderson* involved the alleged fraud by an insurance salesman in selling an insurance policy to the plaintiff. Defendant knew that the policy was not suitable for the plaintiff but made the false representation that it was. Defendant also stressed the fact that the policy was very complex and that he was one of only a few persons who understood it. Consequently, plaintiff relied on defendant's numerous misstatements, partial statements, omissions, and non-disclosures and purchased the policy resulting in the dissipation of the cash value of plaintiff's old insurance policy and the prospect of an indebtedness of $125,000.

Similarly, an award of punitive damages was affirmed in *Howell v. Associated Hotels, Ltd.,* 40 Haw. 492 (1954). In *Howell,* plaintiff brought an action against defendant to recover certain personal property wrongfully withheld by defendant. Plaintiff gave defendant eighteen ektachrome transparencies to sell to a third party. After learning that the transparencies were not sold, plaintiff requested that they be returned. Defendant, however, ignored plaintiff's request and made little or no effort to restore them and claimed that he could not find them. But defendant did in fact have possession of the pictures long before the time of their eventual return to plaintiff.

On the other hand, in *Ress v. Rediess,* 130 Colo. 572, 278 P.2d 183 (1954), the trial court's award of punitive damages was appropriately reversed. In *Ress,* the plaintiff sought to recover actual and exemplary damages for defendants' actions in instituting prior lunacy proceedings against plaintiff. In reversing the award of punitive damages, the court reasoned that although plaintiff was adjudged sane pursuant to the lunacy proceedings, plaintiff, nevertheless, was of questionable sanity. Defendants had probable cause to believe

that plaintiff was insane at the time and acted in good faith. They "acted with, and were prompted by, a proper motive, looking more to the benefit of plaintiff and society, and not through any purpose of injury to plaintiff." *Ress v. Rediess*, 130 Colo. at 580, 278 P.2d at 187.

Clearly, in the instant case, appellant did not act in good faith intending to benefit either appellee or society as in *Ress*. Rather, as in *Anderson* and *Howell*, appellant acted intentionally and for his own benefit in defrauding appellee.

The evidence indicates that, similar to the fraud in *Anderson*, appellant embarked upon a fraudulent scheme designed to acquire a long-term right to appellee's property. Appellant intentionally made the misstatement that his letter of intent was for the 3052 Hibiscus Drive property instead of the agreed upon 2927 Hibiscus Place property and that the $400 was for the first month's rent rather than as a security deposit. He also intentionally inserted the perpetual option provision into the rental contract even though the parties only agreed to a one-year option and obtained Dolly Won's signature by hurriedly showing the document to her and stating that he was in a rush. Appellant further sought to fraudulently perfect his claim to a perpetual option by making numerous improvements to the property without acquiring appellee's consent and preparing a fraudulent wall plan of the improvements and letter of approval.

Thus, we find that even ignoring appellant's fraud on the court, appellant's fraudulent conduct with respect to appellee did rise to the level of oppressiveness, wantonness and malice sufficient to support an award of punitive damages. But to affirm the circuit court's finding as to the appropriateness of awarding punitive damages does not necessarily mean that we also affirm the amount of punitive damages granted.

As early as 1886 it was held that a remittitur may be filed in this court. *Riemenschneider v. Kalaehao*, 5 Haw. 550 (1886).

The rule has been adopted by this court that it is proper, either for the trial court upon an application for a new trial, or for an appellate court in reviewing a judgment, to permit the party, in whose favor a verdict or judgment has been returned or entered, to avoid the

granting of a new trial on account of error affecting only a part thereof, by entering a remittitur as to such erroneous part, when the court can clearly distinguish and separate the same.

*Izumi v. Park,* 44 Haw. 123, 132, 351 P.2d 1083, 1088 (1960) *citing Hansen v. Boyd,* 161 U.S. 397, 411 (1896).

The test on appellate review as to whether the damages awarded by the jury were excessive is whether the award was "palpably not supported by the evidence, or so excessive and outrageous when considered with the circumstances of the case as to demonstrate that the jury in assessing damages acted against rules of law or suffered their passions or prejudices to mislead them." *Vasconcellos v. Juarez,* 37 Haw. 364, 366 (1946) *citing Ward v. I.-I.S.N. Co.,* 22 Haw. 488; *Tsuruoka v. Lukens,* 32 Haw. 263. A similar test is used in a jury-waived case and the inquiry on review is limited to whether, "upon the evidence adduced, reasonable men could have come to the same conclusion as the jury, or the trial court in a jury-waived case." *Lima v. Tomasa,* 42 Haw. 478, 483 (1958) *citing Tsuruoka v. Lukens, supra; Alau v. Everett,* 7 Haw. 82, 85. The test is the same whether general or punitive damages are concerned. *Johnson v. Sartain,* 46 Haw. 112, 375 P.2d 229 (1962).

The proper measurement of punitive damages should be "[t]he degree of malice, oppression, or gross negligence which forms the basis for the award and the amount of money required to punish the defendant. . . ." *Howell v. Associated Hotels,* 40 Haw. at 501. Further, in determining that degree, the analysis is limited to an examination of defendant's state of mind at the time of the act. *O'Harra v. Pundt,* 210 Or. 533, 310 P.2d 1110 (1957). Consequently, defendant's subsequent actions and state of mind during trial are irrelevant.

We are of the opinion that $20,000 punitive damages is excessive in the instant case and possibly a result of appellant's alleged fraud on the court. While appellant is culpable of wanton and malicious fraud and punitive damages are appropriate, we find that the proper amount of punitive damages to be awarded, measured by the degree of malice, oppression or gross negligence of appellant at the time of the act

irrespective of appellant's alleged fraud upon the trial court and sufficient to punish him, is $2,500.00. Consequently, we order appellee to file a remittitur as to $17,500.00 of the $20,000.00 punitive damages originally granted by the trial court.[3]

### III.

Appellant also claims that the trial court erred in refusing to grant him his out-of-pocket costs for the improvements on the 2927 Hibiscus Place property. The trial court made the specific finding of fact that "Defendant and Plaintiff agreed that the Defendant would not be reimbursed for the costs of any improvements placed by him upon the 2927 property. There are no circumstances which would equitably require Plaintiff to reimburse Defendant for the costs of such improvements." We hold that this finding of fact is not "clearly erroneous" pursuant to Hawaii Rules of Civil Procedure 52(a) and will not be set aside.

Some of the improvements were specifically agreed to by the parties. In consideration of a reduction in rent, appellant agreed to enclose the property and to landscape the yard. Clearly, appellant may not recover his costs for these improvements.

---

[3] Generally, in an appeal from a jury trial, if the appellate court decides that the amount of damages is too high, it can give the plaintiff the choice of either filing a remittitur of the excessive portion of the damages or consent to a new trial. To allow the appellate court to order straight out the reduction or increase of the amount of the verdict would serve to substitute the judgment of the appellate court for the jury. This would violate the Seventh Amendment of the United States Constitution and Article I, Section 8 of the Hawaii State Constitution protecting the right to trial by jury in certain cases. *See* Kennon v. Gilmer, 131 U.S. 22 (1889).

But, as in the instant appeal, where a case is tried by the lower court without a jury, the state and federal constitutional provisions relating to the right to jury trial are inapplicable and an appellate court is free to order, absolutely, a remittitur of the excessive portion of damages granted by the trial court. Walker v. Gulf & I. Ry. Co. of Texas, 269 F. 885 (5th Cir. 1921). *See* Annot., 53 A.L.R. 779, 782 (1928). *But see* Kealoha v. Halawa Plantation, 24 Haw. 579 (1918); Reinhardt v. County of Maui, 23 Haw. 524 (1916).

Appellant also made other improvements to the 2927 Hibiscus Place property.[4] However, those improvements were designed to accommodate appellant's own personal preferences and were made without the permission of appellee. Appellee did not agree to pay for any part of the costs of such improvements.

Further, the improvements by appellant were made pursuant to his wanton and malicious attempt to defraud appellee and acquire a valid long-term lease of the property.

> When property is restored to an owner who has been deprived of it by fraud, the owner of the property should have the profit rather than the one who made the profit therefrom after obtaining it by fraudulent representations, although the enhanced value of the property puts the original owner of the property in a better position than that in which he would have been had no wrong been done to him.

*Peine v. Murphy,* 46 Haw. 233, 243, 377 P.2d 708, 714 (1962). Thus, the finding of the trial court that appellant is not entitled to reimbursement for the cost of the improvements is affirmed. The trial court's finding of wanton, oppressive and malicious fraud is also affirmed as of the date of its rendition for the sum of $2,500.00 punitive damages and $1,800.00 compensatory damages.

The case will be remanded to the circuit court for entry of judgment in accordance with this opinion.

*Paul Devens (Christopher N. Visher and Jeffrey M. Taylor* on the briefs; *Ikazaki, Devens, Lo, Youth & Nakano,* of counsel) for Defendant-Counterclaim Plaintiff-Appellant.

*Ton Seek Pai (Okamura Takushi Funaki & Wee,* of counsel) for Plaintiff-Counterclaim Defendant-Appellee.

---

[4] Some of the improvements made included a chandelier, a cupboard under the sink, sliding glass doors enclosing the patio, a hole in the wall to install windows and a new, concrete patio.