ROBERT QUEDDING and SANDRA QUEDDING, Plaintiffs-Appellees, Cross-Appellants, *v.* ARISUMI BROTHERS, INC., Defendant-Appellant, Cross-Appellee

NO. 8197

(CIVIL NO. 4381)

APRIL 13, 1983

LUM, ACTING C.J., NAKAMURA, PADGETT, AND HAYASHI, JJ., AND CIRCUIT JUDGE VITOUSEK ASSIGNED BY REASON OF VACANCY

*Per Curiam.* At issue in this appeal from a judgment for Plaintiffs Robert and Sandra Quedding (the Queddings) in a breach of contract action are three jury instructions and the assessment of special, general, and punitive damages against Defendant-appellant Arisumi Brothers, Inc. (Arisumi). Concluding that $12,964.40 for repairs to the Quedding residence represents a reasonable sum in light of the evidence, we affirm the award of special damages. But the trial judge erred in instructing the jury that it could find Arisumi breached the contract in a "wanton or reckless manner," for the evidence in the record cannot sustain such a finding. We thus reverse the jury's assessment of punitive damages. We further conclude the erroneous instructions on punitive damages may have tainted the jury's consideration of general damages for emotional distress and prejudiced Arisumi's defense. We therefore remand the case for retrial on the issue of Arisumi's possible liability for any emotional distress damages suffered by the Queddings.[1]

I.

In October, 1977 the Queddings entered into a written agreement with Arisumi for the construction of a two-bedroom hollow tile house in the Pukalani Terrace and Country Club Subdivision on the island of Maui for the sum of $27,633. The contract stated the house would be built "in

---

[1] In light of our decision, we do not reach the issue of the trial court's offer of remittitur, raised by the Queddings on cross-appeal. Nor do we find it necessary to address Arisumi's contention that the court below erred in denying its motion for a new trial. We further determine the Queddings' claim of error in the trial judge's denial of their request for prejudgment interest to be without merit.

accordance with plans and specifications, which are identified by the signatures of the parties." The plans for the erection of a "Model 12-B" residence specified the use of eight-inch blocks and placement of one-half inch vertical steel reinforcing bars at four-foot intervals in the cells of the blocks, which were to be grouted with concrete. It was nowhere mentioned in the plans that horizontal steel reinforcing bars would be utilized in the construction. The work was completed on schedule, the contract price was paid, and the Queddings took possession of the house in February, 1978.

On September 19, 1979 the Quedding residence was damaged when a driverless van rolled down an incline, rammed the east wall of the house, and caused a portion of the wall to collapse. Inspection of the wall revealed the absence of any reinforcing steel bars in the damaged nine-foot section of the east wall. The Queddings then hired a licensed general contractor to investigate suspected construction defects, and his findings formed the basis for their complaint seeking $12,000 in special damages to effect necessary repairs to the wall and other areas of the house where structural problems had been uncovered, $10,000 in general damages for emotional distress inflicted by Arisumi's faulty construction activities, and $5,000 in punitive damages.

Answering interrogatories propounded by the trial judge, the jury found Arisumi had breached the contract and awarded the Queddings $12,964.40 in special damages, $10,000 in general damages, and $5,000 in punitive damages. However, remittitur in the amount of $5,000 against the portions of the verdict comprising general and punitive damages was subsequently allowed by the trial judge. After denials of a Motion for Judgment Notwithstanding the Verdict and a Motion for New Trial, Arisumi perfected a timely appeal from the judgment.

## II.

Arisumi's initial contention is that the trial judge erred in instructing the jury as follows:

Instruction No. 11: It is implied in the contract between the Plaintiffs and Defendant that the house constructed by the

Defendant would comply with the requirements of the Uniform Building Code.

Arisumi claims the instruction was prejudicial because it led the jury to conclude the contractor breached the contract by failing to install horizontal, as well as vertical, steel reinforcing bars—a requirement under the County of Maui's Uniform Building Code—in the Quedding house, even though the plans said nothing about such bars. Arisumi maintains the explicit terms of a contract are controlling and a builder should be expected to meet Building Code requirements only when they are expressly incorporated in the contract.

But Arisumi's understanding of a builder's obligation does not comport with pertinent precepts of the law of contracts. As we recognized in *City & County v. Kam,* 48 Haw. 349, 402 P.2d 683 (1965), it is a "general rule that the existing law is part of a contract where there is no stipulation to the contrary." *Id.* at 355, 402 P.2d at 687. Ordinance No. 735 of the County of Maui amended the Permanent Ordinances of the County of Maui to provide that the Uniform Building Code, 1970 Edition, shall apply to the construction of any building or structure in the County. This law was in effect when the Quedding-Arisumi contract was consummated; and since there was "no stipulation to the contrary," the trial judge correctly concluded the Code was implicitly a part of the contract. Hence, we find no error in his instruction to the jury that Arisumi was contractually obligated to comply with Code requirements in the construction of the Quedding house.

### III.

Arisumi acknowledges the presence of defects in the Quedding house as constructed but claims the award of special damages to effect needed repairs was unreasonable and excessive. It avers the current cost of the materials and labor necessary to satisfy all of its obligations under the contract would total a mere $500, and definitely not the $12,964.40 assessed by the jury.

Arisumi accurately reiterates that "in Hawaii, the measure of damages in building contracts is generally the cost of correction." *Izumi v. Park,* 44 Haw. 123, 128, 351 P.2d 1083, 1086

(1960); *see also Ritchey v. Sato,* 39 Haw. 500, 503 (1952). But we do not concur with its further thesis that the special damages awarded in this case were exorbitant.

In reviewing a jury's award of damages when a claim of excessiveness is pressed upon us for decision, we are bound by the general rule that

> a finding of an amount of damages is so much within the exclusive province of the jury that it will not be disturbed on appellate review unless palpably not supported by the evidence, or so excessive and outrageous when considered with the circumstances of the case as to demonstrate that the jury in assessing damages acted against rules of law or suffered their passions or prejudices to mislead them.

*Vasconcellos v. Juarez,* 37 Haw. 364, 366 (1946); *see also Brown v. Clark Equipment Co.,* 62 Haw. 530, 536, 618 P.2d 267, 271-72 (1980); *Kang v. Harrington,* 59 Haw. 652, 663, 587 P.2d 285, 292 (1978); *Orso v. City & County,* 56 Haw. 241, 249, 534 P.2d 489, 494 (1975); *Nakagawa v. Apana,* 52 Haw. 379, 389-90, 477 P.2d 611, 617 (1970); *Johnson v. Sartain,* 46 Haw. 112, 114, 375 P.2d 229, 230-31 (1962). In this case we find clear support for special damages in the amount of $12,964.40 in the evidence presented by the Queddings' expert. We thus conclude the award was not excessive.

### IV.

Two other jury instructions are challenged by Arisumi. They are:

> Instruction No. 13: You may find that the Defendant: a) Did not breach its contract with the Plaintiffs; or b) Did breach its contract with the Plaintiffs; or c) Did breach its contract with the Plaintiffs in a wanton or reckless manner.

and

> Instruction No. 16: If you find that the Defendant breached its contract with the Plaintiffs in a wanton or reckless manner, in addition to awarding Plaintiffs special damages, you may also award punitive damages.

Arisumi submits these instructions were erroneous because the evidence adduced at trial was insufficient to support a finding of wantonness or recklessness in Arisumi's construction

activities; thus it sees no grounds for a jury award of punitive damages.

We would have to agree. In *Kang v. Harrington,* we said

[p]unitive damages may be awarded only in cases where the wrongdoer "'has acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations'; or where there has been 'some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences.'" (Citations omitted). *Bright v. Quinn,* 20 Haw. 504, 512 (1911).

59 Haw. at 660-61, 587 P.2d at 291; *see also Goo v. Continental Casualty Co.,* 52 Haw. 235, 239, 473 P.2d 563, 566 (1970); *James W. Glover, Ltd. v. Fong,* 40 Haw. 503, 511 (1954); *Howell v. Associated Hotels, Ltd.,* 40 Haw. 492, 495-96 (1954). We have also ratified the obvious by ruling that if the evidence presented at trial is insufficient to support a finding that the "wrongdoer" acted wantonly, oppressively, or maliciously, the issue of punitive damages may not be presented to the jury. *Goo v. Continental Casualty Co.,* 52 Haw. at 239, 473 P.2d at 566; *cf. Gelber v. Sheraton-Hawaii Corp.,* 49 Haw. 327, 329-30, 417 P.2d 638, 640 (1966).

Here, the trial court erred by instructing the jury on punitive damages; a detailed review of the record convinces us Arisumi did not engage in conduct amounting to wanton, oppressive, malicious, or reckless behavior. We therefore reverse the jury's assessment of punitive damages.

V.

Having concluded the jury was erroneously instructed with regard to punitive damages, we turn to the jury's verdict on general damages for emotional distress to decide whether it may have been unduly influenced by the erroneous charge delivered by the trial judge. We are guided here by the general rule of law that "[e]rroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial." *Turner v. Willis,* 59 Haw. 319, 326, 582 P.2d 710,

715 (1978); *see also Island Holidays, Inc. v. Fitzgerald,* 58 Haw. 552, 569, 574 P.2d 884, 894 (1978); *City & County v. Bennett,* 57 Haw. 195, 206, 552 P.2d 1380, 1388 (1976); *Gelber v. Sheraton-Hawaii Corp.,* 49 Haw. at 330-31, 417 P.2d at 640.

We cannot determine from an examination of the record whether the erroneous instructions actually influenced the jury's verdict on damages for emotional distress. Nor can we say with any assurance that the errors were harmless and did not taint the verdict. But since the erroneous instructions may indeed have been prejudicial to Arisumi in the jury's assessment of general damages for any emotional or mental distress inflicted upon the Queddings, we must presume harm to Arisumi. We thus set aside the award of damages for emotional distress and remand the case for a new trial on this issue.

Affirmed in part, reversed in part, and remanded for further proceedings not inconsistent with this opinion.

*John T. Vail* for defendant-appellant, cross-appellee.

*Edward F. Mason (Mason & Scott,* of counsel) for plaintiffs-appellees, cross-appellants.